[No. 3492.  Decided March 3, 1900.]

## J. S. ELLIOTT, *Respondent,* v. PUGET SOUND AND CENTRAL AMERICAN STEAMSHIP COMPANY, *Appellant.*

EVIDENCE—CONTENTS OF LETTER—ADMISSIBILITY OF EXPLANATORY TESTIMONY.

Where a letter written by a witness is introduced in evidence for the purpose of contradicting his testimony, he is entitled to explain the statements made therein, as the letter, under such circumstances, is not governed by the rule which precludes a written instrument from being varied or altered by parol testimony.

SALES—BREACH OF WARRANTY—TIMELINESS OF CLAIM.

In an action upon an account for goods sold in which the defense set up is breach of warranty concerning the goods, the fact that the breach was not claimed until after payments had been made on the account will not estop the defendant, since his case is governed by the same rule as that which permits a suit for breach of warranty even after the purchase price has been paid.

SAME—WHAT CONSTITUTES EXPRESS WARRANTY.

In an action to recover a balance of account for a quantity of beer sold defendant, the answer sets up an express warranty when it alleges that the beer was sold for export trade in Central America and that plaintiff undertook and agreed that the beer should be put up in proper condition for that trade and properly bottled and corked.

Appeal from Superior Court, King County. — Hon. E. D. BENSON, Judge.  Reversed.

*Gorham & Gorham* and *John K. Brown,* for appellant.

*Preston & Bell,* for respondent:

In this country a distinction is made between sales to the consumer for immediate consumption and sales of food or provisions by dealer to dealer.  In the former case a warranty is implied that the goods are wholesome and

sound; but, where the goods are sold by dealers to dealers, the authorities unanimously declare that there is no implied warranty arising out of the ultimate intention that the goods shall be consumed as food. In the case of the wholesale trade in goods for consumption, they are considered wholly as subjects of commerce and not as food. Tiedeman, Sales, § 191; *Howard v. Emerson,* 110 Mass. 320 (14 Am. Rep. 608); *Wiedeman v. Keller,* 49 N. E. 210; *Moses v. Mead,* 1 Denio, 378 (43 Am. Dec. 676); *Ryder v. Neitge,* 21 Minn. 70; *Humphreys v. Comline,* 8 Blackf. 520.

The implied warranty, if it existed at all, related to the condition of the beer at the time it was delivered to the appellant on board its steamer at Seattle. It would be unreasonable to hold that the implied warranty continued indefinitely. The better rule seems to be that in such a case the warranty is fulfilled by delivery of the goods to the vendee in good condition. *English v. Spokane Commission Co.,* 57 Fed. 451; *Mann v. Everston,* 32 Ind. 355; *Stamm v. Kuhlmann,* 1 Mo. App. 296; *Leggat v. Brewing Co.,* 60 Ill. 158.

The opinion of the court was delivered by

GORDON, C. J.—This action was brought to recover a balance of $701.68 alleged to be due upon an open account for certain beer sold by respondent's assignor, the Seattle Brewing & Malting Co., to the appellant between April 10, 1896, and August 26, 1897. The answer admits the correctness of the account, but, as an affirmative defense, alleges that the beer was sold by the respondent's assignor to appellant for export trade in Central America; that at the time of the sale said assignor undertook and agreed that the beer should be put up in proper condition for that trade, and properly bottled and corked; that in one lot of 285 cases of beer sold in April, 1896, for which appellant

was charged in said account the sum of $907.50, all of which beer was represented to be properly bottled, corked, and packed in a suitable condition for said export trade in Central America, 38 cases were so defectively and improperly corked as to become wholly worthless and of no value; that appellant has been unable to dispose of any of the same; that 112 other cases were so defectively and improperly corked that appellant was not able to realize any greater sum than $680 thereon; that the reasonable value at that time of 150 cases of beer in Central America, if the same had been properly bottled, corked, and packed as agreed by plaintiff, would have been, and was, the sum of $1,631; that the amount charged by said brewing company against appellant for said 150 cases of beer was the sum of $525; that the freight on the same to Central America, paid by appellant, amounted to $150, the same being a reasonable charge therefor; that the duty on the said beer, exclusive of freight, amounted to $806, which duty was paid by appellant; that by reason of the defective and improper bottling, corking, and packing of said beer the appellant was damaged in the sum of $950, which he claims as an offset to plaintiff's demand.

In his reply to the matters set forth in this affirmative answer, the respondent failed to deny any of the allegations, excepting those relating to the defective bottling, corking, and packing of the 150 cases, and the allegations relating to the appellant's inability to realize more than $680 thereon, and in relation to the reasonable value in Central America of 150 cases of beer properly bottled, corked, and packed.   So that under the pleadings we have a warranty pleaded and admitted, and a breach thereof alleged and denied.   At the conclusion of the evidence the trial court dismissed the jury and rendered judgment in favor of the plaintiff for the full amount of his claim.

This appeal is from that judgment, and from an order denying a motion for a new trial.

At the trial the defendant (appellant here) produced as a witness one J. E. Chilberg, who testified that during all of the time mentioned he was the general agent of appellant in Central America, and also the agent of respondent's assignor for the sale of its beer; and he stated minutely and in detail wherein it was defectively bottled and corked,—among other defects, that there appeared to be rotten seams running through the corks, which permitted the gas to escape, thereby rendering the beer flat and worthless. He also testified that for a time a portion of the beer was intrusted to one Graham, at Guatemala City, for sale, inasmuch as the witness was then about to go north to Seattle, which was in July, 1896; but upon his return to Central America the latter part of October, 1896, he found that Graham had sold only two or three cases, and there was considerable complaint about it, and *"also some that he had bought from the brewing company himself. I took our beer from him . . . and placed it on sale myself. I had received only 148 cases, however, and found that, whatever place we would sell it, it would be returned, or else big reclamations would come back on account of defective corking, the beer being flat."* And then he proceeded as before stated to specify in detail the worthless character of the bottling and the reason for it, viz., that it was improperly bottled and corked.

Upon cross examination of this witness, counsel for the respondent produced a letter admittedly written by witness in Guatemala City, December 19, 1896, addressed to plaintiff's assignor, which letter was by respondent introduced in evidence. The letter refers to a number of accounts and transactions between the brewing company and different customers in Central America. It was written by the witness, not as the agent for the defendant, but of the

brewing company.    Only two paragraphs of the letter were regarded by respondent's counsel as material, and these were marked and read to the jury.    They are as follows:

(1) " Saw the Ellis firm in San Salvador, though the principal was away, and was told that they had some of our beer still on hand,—*why, I cannot understand,* as Imbode was able to sell 135 cases, consigned to the S. S. Co., right under their noses.    As his is all gone, and the demand for Seattle beer is good in Salvador, they should have it closed out very soon.    They seem sore, for some reason or other, though it seems to me that the *soreness should be on the other side.*"

(2) " I have not seen Graham again since returning here, and do not know whether he has sent you money or not, though he said he expected to send you a statement and remittance before I left.    As I have no authority in this matter, I have not said much to him.    If he has not sent you the money, I think that it would be advisable for you to send the collection to the Banco Americano here, with power of atty. to collect same, and instructions to place the same in hands of their atty. for collection, should he not pay it.    Avoid mention of my name when you do this, as it would only serve to make Graham mad and would do no good; and in all probability I will be somewhere else when it comes, and he would want a stand off to see me.    He has plenty of money, and can pay, and would have long ago were it not for the flat beer.    De Neuf could tell you something of it, as he was here when it was being sold."

On redirect examination, counsel for appellant requested the witness to explain these paragraphs, and to state what shipments they referred to,—whether the shipment in question or some other.    Upon objection of respondent's counsel, the court ruled that the letter spoke for itself and was not susceptible of explanation.    This constitutes the first ground of error assigned.

We think the witness should have been permitted to give the explanation.    The court applied to this letter the rule which precludes a written contract from being varied or altered by parol testimony, when, clearly, that rule h:·· application to the question here.    Here is a letter written by an agent to his principal, and by the principal put in evidence against a third person.    We know of no rule of law making the statements in such a letter conclusive against such third party, or even against the witness himself, who would be entitled to explain it as he would be entitled to explain any other piece of testimony or evidence which he had given or produced.    The error was emphasized when the court subsequently held that the letter was conclusive, and destroyed the force of the witness's testimony, and made that one of the grounds for the judgment which was rendered.    The paragraphs of the letter above set forth fall short of convincing us that they refer to the shipment in question.    The reference to Graham, had witness been permitted to explain, might have been shown to relate to a promise by Graham to remit to the brewing company for the beer sold to him on his own account, because it appears from the testimony of the witness that Graham had previously been a customer of the brewing company, and that the shipment in question was not the only beer he had received from the respondent's assignor. The Ellis firm, mentioned in the other paragraph of the letter, appears to be a firm located in San Salvador.    Nowhere in the testimony does it appear that that firm was connected in any way with the shipment here in question.

It is contended that the judgment was right irrespective of the ruling in regard to the letter, because it is asserted that no claim was made by the appellant on account of defective bottling until after the date of all of the items of the account, and after payments thereon had been made;

and it appears from the record that the trial judge was of the opinion that good faith required such complaint to be made more promptly.    The position contended for cannot be maintained.    The case is governed by the same rule of law which would obtain if the defendant were plaintiff suing for a breach of warranty, and it appears to be quite well settled that such action can be commenced even after the purchase price has been paid.    *Cook v. Moseley,* 13 Wend. 277 ; 28 Am. & Eng. Enc. Law, 835.

We cannot assent to the claim made by respondent's counsel that the answer only sets up an implied warranty and a breach thereof.    On the contrary, we think sufficient has been stated to show that the answer alleges an express warranty, which was admitted by a failure to deny.    The case should have been permitted to go to a jury, and a verdict in favor of the defendant would not have been without sufficient legal evidence to support it.    The warranty being admitted, and there being explicit testimony tending to show a breach, a clear case was made for the consideration of a jury.

The judgment will be reversed and the cause remanded, with directions to award a new trial.

REAVIS, DUNBAR and FULLERTON, JJ., concur.