[No. 6004.  Decided February 9, 1906.]

THOMAS C. HOPKINS et al., Appellants, v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Respondent.[1]

INSURANCE—ENDOWMENT PROVISION—WAIVER—PAYMENT OF PREMIUMS AFTER MATURITY—FRAUD—EVIDENCE—SUFFICIENCY. There is no waiver of a clause in an insurance policy allowing the insured to receive an endowment of $1,000 after the lapse of ten years, nor any estoppel on the part of the insured to claim the benefit of such clause, in lieu of continuing the policy for life by payments, where it appears that the insured were old people, inexperienced in business, and upon demanding the endowment they were put off from time to time on the ground that assessments provided for in the policy for such payment must be made, and where, relying upon fraudulent representations that payments must be continued by them to keep the policy in force, they made such payments; since waiver requires full knowledge of one's rights, and the intent must be unequivocal and clearly proven.

SAME—RECOVERY OF PREMIUMS ERRONEOUSLY PAID. Payment of premiums on an insurance policy, induced by fraudulent representations by the company, while the insured were making demand for the right to an endowment, will not amount to a waiver of such right; and the payments may be recovered, even if negligently made.

SAME—FRAUD—ESTOPPEL TO ASSERT WAIVER. An insurance company that fraudulently induces payment of premiums ordinarily amounting to a waiver of a clause for the payment of an endowment, is estopped to assert such waiver or to claim that the insured had elected not to take advantage of the endowment clause.

Appeal from a judgment of the superior court for King county, Morris, J., entered July 11, 1905, upon sustaining a demurrer to plaintiff's amended complaint, dismissing an action on an endowment clause of a policy of life insurance. Reversed.

Wardall & Wardall and Frank C. Park, for appellants.

Rufus J. Burglehaus and Emmett N. Parker, for respondent.

DUNBAR, J. — The complaint alleges, in substance, that Thomas C. Hopkins, one of the appellants in this case, en-

[1] Reported in 83 Pac. 1019.

tered into a contract of life insurance with the defendant corporation, by the terms of which plaintiff agreed to pay promptly all dues and assessments which should be levied by defendant, and at the end of ten years, to wit, on March 18, 1898, he was, in the event of his survival, to surrender his certificate and receive $1,000 upon an endowment policy; that a clause in the contract provided that, in the event of the death of the insured before the ten years had elapsed, Carrie Hopkins, one of the appellants here, was to receive $2,000; that the plaintiff performed all and every condition of his contract, etc., and at the termination of the period of ten years, surrendered to the defendant his policy, and demanded the sum due thereon; that the defendant at once returned the contract to plaintiff, requesting him to keep it until notified by defendant that the proper assessment had been made upon the certificate holders, and a sufficient sum had been raised by such assessment to pay said plaintiff's certificate; that a number of times after said first demand, covering a period of more than two years thereafter, the plaintiff demanded that defendant pay said sum of $1,000; that at each of such times said defendant held out and represented to plaintiff that the funds had not been raised therefor, and that defendant would notify plaintiff when sufficient funds had been raised by such assessments, and when it would be ready to pay such certificate; that the necessary steps were being taken and had by defendant for the collection of the assessments necessary to pay plaintiff; that defendant has never notified plaintiff that it had completed the assessment for the payment of said policy, and was ready to pay the same; that plaintiffs relied upon such representations of defendant that it was taking the necessary steps to collect the funds to pay said policy, and that it would notify plaintiffs when the funds had been collected on the assessments; and that by reason of the holding out of such promises of an amicable settlement, plaintiffs delayed the bringing of suit

38—41 WASH.

on said policy till this time; that defendant has not paid said sum of $1,000, or any part thereof, and that the same is now due and owing to these plaintiffs; that on or about the 1st day of May, 1898, the defendant demanded, in writing, of these plaintiffs the sum of $8.45, as and for a payment to it for the purpose of keeping said policy in force, and such written demand required plaintiffs to make such payment to defendant on or before the 1st day of May, 1898, and stated that in default of such payment the said policy would become void and all payments theretofore made thereon would become forfeited to defendant; that at such times these plaintiffs were old people, and were then visiting at the city of Dawson, Yukon territory; that they were inexperienced in business affairs; that they were ignorant of, and did not understand the purport and meaning of, the terms of their said policy and their rights thereunder; that they were also ignorant of the manner of levying assessments by defendant upon the holders of policies, and knew nothing of the internal management of insurance companies; that they were ignorant and unacquainted with the amount of proceeds on hand with said company at the time said demand was made, and also the amount necessary to be raised in addition thereto to cover their policy; but that the defendant, well knowing the facts in regard to these plaintiffs, and the policy which they held, unlawfully demanded, extorted, charged, took, and received from these plaintiffs the sum of $8.45, on the pretense that it would cancel and forfeit such policy if such payment was not made; and believing, on account of such representations, that the policy would become forfeited and lost to these plaintiffs if said payment was not made, and in order to avoid the expense of litigation and save themselves from unnecessary charges and expenses, they were coerced by the said defendant to make such payment; that under the same circumstances other payments were made (which are set forth in the complaint); that none of such sums were ever justly due or owing to said defendant at any time, or at all, but that

all such sums were unlawfully extorted and exacted from plaintiffs. The prayer is for judgment against the defendant, on their first cause of action, in the sum of $1,000, with interest thereon, at the rate of six per cent per annum from the 18th day of March, 1898, together with costs and disbursements. On the second cause of action, judgment is prayed for the different sums paid to the defendant, as alleged in the first cause of action, up to the time of the commencement of this suit. Demurrers were interposed to both causes of action, and were sustained on the ground that no cause of action was stated in the complaint.

The policy, which is the basis of the complaint and made a part thereof, provides unequivocally for an endowment policy and for an endowment fund, expressly providing that, if the holder of the certificate shall keep the same good by promptly paying all the dues and assessments, and survive until the 18th day of March, 1898, he shall at said date surrender the certificate to the association and receive the sum of $1,000 from the endowment fund. It then proceeds to state how the endowment fund shall be supplied, by assessments at certain rates, etc., which explains the allegation made in the complaint that the plaintiffs' right of payment under the endowment provision was postponed until the endowment fund should be supplied by assessment.

Whether the contract provides for any other character of payment, it is not necessary in this case to determine, but, conceding that there was a choice of two rights given by the terms of the contract, we think there was no waiver of the right to receive the $1,000 provided for in the policy at the expiration of ten years, and which was demanded by the appellants. The case is argued here on the proposition alone that the complaint did not state facts sufficient to constitute a cause of action, and the action of the court in sustaining the demurrer must have been upon the theory of waiver or estoppel, that the appellants, by proceeding after the ten years had expired, to pay the regular premiums on the policy,

had elected to accept the conditions of the policy, which provided for the payment of $2,000 at the death of the assured.

But we are of the opinion that the court did not place a proper construction upon this complaint. A waiver is defined to be the intentional relinquishment of a known right, and there can be no waiver unless the person against whom the waiver is claimed had a full knowledge of his rights. 29 Am. & Eng. Ency. Law, 1093, and cases cited. It was held, in *Hamilton v. Home Fire Ins. Co.*, 42 Neb. 883, 61 N. W. 93, that knowledge of the existence of a right and the intention to relinquish it must concur to create an estoppel by waiver. In this case, if the allegations of the complaint are true—and they must be taken to be so, those which are well pleaded—the assured did not have a full knowledge of his rights; for according to the representations made to him by the insurance company, it was necessary for him to make these payments during the time the company was making arrangements to pay him the amount of the policy, in order that the policy should not become void. It was upon this representation that he acted.

Neither will waiver be implied from slight circumstances, but must be evidenced by an unequivocal and decisive act clearly proven. 29 Am. & Eng. Ency. Law 1105. These people were old, inexperienced in business affairs, and anxious to keep their policy from becoming void; and this state of ignorance, together with the representations which were made to them by the company's agent, was the cause of the payments which were relied upon as a waiver of their rights under the endowment provision of the contract and an acceptance of the other provisions of the policy. It was held, in *Fulton v. Metropolitan Life Ins. Co.*, 19 N. Y. Supp. 660, that the failure to read a contract would not bar relief when, if relief was afforded, no injury would happen to others, and particularly when the person to whom money was paid by mistake knew, or ought to have known, that he was not entitled to receive it. How much stronger is this case, where the in-

surance company not only knew that it was not entitled to receive this money, but did receive it through its affirmative misrepresentation of facts.

Neither can it be inferred that a party waives his right under a contract by making a payment thereunder, while at the same time making demand for his rights.   *Griffith v. Newel* (S. C.), 48 S. E. 259.   It is also announced in 29 Am. & Eng. Ency. Law, 1095, that the validity of a waiver requires that it shall have been made intentionally and voluntarily; that voluntary choice is of the essence of waiver, and the view that waiver is a legal result operating upon a certain state of facts, independent of intent, has been declared to be without foundation.   The same authority, on page $1096_2$ further declares, in accordance with the authorities cited, that the existence of an intent to waive is a question of fact, and must be made clearly to appear.

It was said by this court in *David v. Oakland Home Ins. Co.,* 11 Wash. 181, 39 Pac. 443, where the parties were endeavoring to adjust a loss, that so long as the insured was given the right to suppose that the question of adjustment was an open one, he had the right to assume that the condition of the policy as to the time for the commencement of an action thereon had been waived by the company, and such waiver would continue until, by some definite action on its part, the company had notified the insured of the rejection of its claim, after which he would have a reasonable time in which to commence an action upon the policy.   As sustaining this contention, see, also, *Birge v. Browning,* 11 Wash. 249, 39 Pac. 643 ; *Elliott v. Puget Sound etc. S. S. Co.,* 22 Wash. 220, 60 Pac. 410 ; *Huntington v. Lombard,* 22 Wash. 202, 60 Pac. 414.

Waiver as applied to insurance is identical with estoppel. May, Insurance, § 505, says that,

" 'Estoppel' and 'waiver,' though not technically identical, are so nearly allied, and, as applied in the law of insurance, so like in the consequences which follow their successful application, that they are used indiscriminately by the courts."

A waiver to be an estoppel must be voluntary, and it is settled that a voluntary payment is only made with full knowledge of the circumstances upon which it is demanded, and without artifice, deception, or fraud. According to the allegations of the complaint, these payments were not made with knowledge of all the circumstances, but upon the representation that they were necessary to keep the policy from lapsing or becoming void. It was a mistake, if mistake at all, of material facts, and it is a general rule that money paid under a mistake of material facts can be recovered back, although there was negligence on the part of the person making the payment, and especially if the payee was in any way responsible for the mistake.

But the principle of estoppel should be applied in this case to the respondent. It is one of the fundamental principles of law, based upon a universally recognized principle of morals, that one should not be allowed to take advantage of his own wrong, and according to the complaint, the payments were made by reason of false representations made by the respondent, inducing the fear on the part of the appellants that their policy would be rendered void if such payments were not made; and although some years have elapsed since the demand for these payments was made, during which time they have continued, yet they were induced in the first instance by the wrongful act of the respondent, at which time it informed the appellants that it would notify them when it was ready to pay the policy, and not having so notified, and having by its wrongful acts compelled them to commence making these payments, the law will not too closely compute the time within which the payments should cease, but will presume that the later payments were made with the same understanding, and by reason of the same representations, that the earlier ones were made.

The complaint, in our judgment, stating a cause of action, both as for the recovery of the endowment and of the money paid through mistake and misrepresentations, the judgment

will be reversed, and the cause remanded with instructions to the lower court to overrule the demurrer to the complaint.

Mount, C. J., Crow, Rudkin, Fullerton, and Hadley, JJ., concur.