[No. 6858. Decided February 21, 1908.]

W. P. FULLER & COMPANY, *Respondent*, v. EMMET HARRIS
*et al.*, *Appellants*.[1]

SALES—ACTION FOR PRICE—EVIDENCE—ADMISSIBILITY—QUALITY OF
GOODS. Where, upon a claim of a breach of a warranty of shellac
sold for finishing furniture, defendants in an action for the price
had introduced evidence tending to show that it was adulterated
and worthless and that it flaked and chipped off after it had been
treated with a glue preparation, it is competent for the plaintiff to
show in rebuttal that, at defendant's request, a witness had sold an
inferior quantity of glue to them, which if used on the furniture
would have produced the effects ascribed by the defendant to the
quality of the shellac, there being direct evidence that the shellac
was of good quality.

SAME—TRIAL—INSTRUCTIONS — ERRORS CURED — BREACH OF WAR-
RANTY—DELAY IN MAKING CLAIM. It is not prejudicial error to in-
struct that delay for a long time in asserting a claim for damages
for breach of warranty for shellac sold is a circumstance against
the good faith of the claim, where a further instruction was given
to the effect that the party was under no obligation to return the
property on discovery of the breach but could retain the same and
recover his damages, in the absence of any request for any other
instructions on the subject or any explanation of the instruction
complained of.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered January 5, 1907, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
on contract. Affirmed.

*Charles P. Harris* and *Bamford A. Robb*, for appellants.

*Gray & Stern* (*Jas. A. Snoddy*, of counsel), for respond-
ent.

CROW, J.—This action was brought by W. P. Fuller &
Company, a corporation, to recover $240.98 from the defend-
ants, Emmet Harris and T. P. Keeney, copartners as Harris-

[1]Reported in 93 Pac. 1080.

Keeney Company, for certain goods sold and delivered, including one barrel of powdered white shellac, of the alleged value of $180.08. The defendants admitted the purchase, but for an affirmative defense alleged that the shellac was impure, adulterated, and worthless; that it was purchased by them with plaintiff's knowledge that it was intended for use in finishing furniture; that plaintiff warranted it as fit for such use; that defendants could obtain no other shellac at Hongkong, China, where their furniture factory was located; that before they discovered the worthlessness of the shellac they had used about one-half of it in finishing large quantities of furniture which appeared to be in good and merchantable condition when finished; that after the furniture had been shipped to defendants' customers, the shellac finish flaked and fell off; that their customers refused to receive the consignments, and that the defendants were thereby damaged in the total sum of $3,000, for which they asked judgment.

The only issue was as to the quality of the shellac, and the alleged damages. It appears from undisputed evidence that no claim for damages was presented to the plaintiff until the answer was served herein. The goods were sold August 9, 1904. This action was commenced November 28, 1905, and the defendants answered on February 26, 1906. The original agreed purchase price for the goods sold was $251.58, but the plaintiff alleged that the defendants became entitled to an allowance of $10.60 on account, which was made on January 25, 1905. The undisputed evidence shows that this allowance was made at the time alleged, in settlement of some claim for a reduction presented by the defendants, but that no damages were then mentioned. The plaintiff offered evidence tending to show that, when the $10.60 credit was allowed, the defendants asked for an extension of time on the remainder of the account, which was granted. On a jury trial a verdict was rendered in favor of the plaintiff. From the judgment entered thereon this appeal has been taken.

The appellants, in presenting their defense, offered evidence showing that it was their custom, before applying the shellac finish, to treat the furniture with a preparation made with glue. They also introduced the depositions of their customers to whom furniture had been shipped, showing the inferior quality of finish. There is much doubt whether any of this evidence indicated that the defective finish resulted from the use of inferior or adulterated shellac. After this evidence had been admitted, the respondent introduced a witness, who, over appellants' objection, was permitted to testify that he had, at appellants' request, sold for respondent and delivered to them an inferior quality of glue which, if used in preparing the furniture for finish, would produce the conditions to which appellants' customers had testified. The trial court afterwards denied appellants' motion to strike this evidence, and refused to instruct the jury to disregard the same. Appellants now claim that prejudicial error was thereby committed. Appellants introduced no direct evidence showing that the shellac shipped by respondent was of an inferior or worthless quality. In fact, they excuse themselves for using it in finishing a large amount of furniture by claiming they did not then know it to be worthless, but supposed it to be as warranted. The principal facts upon which they now predicate their claim that it was worthless are that they used it in finishing, and that the finish afterwards flaked and fell off. Respondent's witnesses positively testified that a sample of the shellac taken from the barrel immediately before shipment had been examined and found to be first class in every respect. Under the issues and these circumstances we fail to understand how any prejudicial error was committed by permitting respondent to show the sale of the inferior glue shipped to appellants at their request, as it tended to show that appellants had an opportunity to use it in preparing the furniture, and it was contended that such use was improper. There was no witness corroborating the evidence of

one of the appellants, who was the only person testifying to the method of using the glue and shellac in finishing. His credibility was for the jury, and in passing thereon and in weighing his evidence, it was proper for the jury to know and understand all the attendant circumstances.

The appellants further contend that the court erred in instructing the jury as follows:

"The jury are instructed that if they believe from the evidence that the defendants delayed asserting any claim against the plaintiffs until after the plaintiffs had commenced suit, and that defendants had knowledge of the defect in the shellac for a long time prior, then you may regard defendants' failure to assert such claim as a circumstance against the good faith of defendants' claim."

This instruction as worded is perhaps not entitled to an unqualified approval. There is no doubt but that an unreasonable delay in presenting appellants' claim for damages, when as here contended they had obtained an item of credit and asked further time for payment, should be considered by the jury in passing upon their good faith or lack of good faith. The language used by the court, in the absence of any further instructions, might have possibly misled the jury into understanding that such unexplained delay amounted to a waiver of appellants' right to recover damages; and the question now before us is whether the instruction, in view of the entire record, constituted prejudicial error. In *Elliott v. Puget Sound etc. S. S. Co.*, 22 Wash. 220, 60 Pac. 410, cited by the appellants, it was in substance held that a vendee's failure to make a claim for damages on account of the defective condition of goods sold, until after the dates of all items of the account, and after payments had been made thereon, was not such a showing of lack of good faith as to necessarily deprive the vendee of his right to afterwards plead, prove, and recover damages in an action for the purchase price.

"If a warranty has been proved, keeping the goods, delay-

ing to give notice of the defect, etc., may furnish a strong presumption against an alleged breach of warranty; but cannot bar the buyer from suing for, or recouping his damages for such breach, if proved." Abbott, Trial Evidence (2d ed.), Ch. XVI, page 431, § 84.

The instruction above set forth does not in this case go to the extent of advising the jury that appellants would by such delay necessarily deprive themselves of the right to claim damages. It is not shown that they requested any instruction on this subject, or that they asked the court to modify or explain the instruction given. The evidence that such delay did occur, and that the damages were first claimed in the answer, was undisputed. Yet the court further instructed as follows:

"The purchaser of an article purchased under a warranty is under no obligation to return the same on discovery of breach of a warranty, but may affirm the contract, retain the goods, and recover his damages, arising from the breach of warranty in an action brought by the seller for the purchase price, if any such damages he has sustained."

On this record we fail to see how the jury could have been misled, or that any prejudicial error was committed. The judgment is affirmed.

HADLEY, C. J., MOUNT, FULLERTON, and ROOT, JJ., concur.