[No. 15042.   Department One.   January 17, 1919.]

# F. M. HASKELL et al., as Haskell Plumbing Company, Respondents, v. CARLISLE PACKING COMPANY, Appellant.[1]

TRIAL (29)—RECEPTION OF EVIDENCE—REBUTTAL.  Where the plaintiff's evidence in chief showed good workmanship in the manufacture of tanks for the defendant, and defendant's evidence showed they were leaky, it is proper rebuttal for the plaintiffs to show an admission by the defendant's plumber that he had caused the leakage.

EVIDENCE (52, 93)—STATEMENTS OF AGENT—RES GESTAE.  Upon an issue as to the cause for the leakage of gasoline tanks manufactured by the plaintiffs for the defendant, evidence that defendant's plumber, while engaged in connecting up the tanks, stated that he had broken a lug and obtained materials for stopping the leak is admissible as a declaration by an agent within the scope of his employment, and also as part of the res gestae.

SALES (127, 128)—ACTION FOR PRICE—DEFENSES—SET-OFF—DEFECTS.  Where gasoline tanks manufactured for defendant had a substantial value, and are retained by the defendant without giving plaintiffs an opportunity to repair or remove them, he cannot defend an action for the price on the ground of defective workmanship, but must pay the price with the understanding that plaintiffs would be liable for damages for breach of warranty if they were not fit for the use for which they were made.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered March 6, 1918, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract.   Affirmed.

*Will J. Griswold*, for appellant.

*Sather & Livesey*, for respondents.

MITCHELL, J.—This action was instituted by the F. M. Haskell Plumbing Company, a partnership, to recover a judgment against defendant for the sum of

[1]Reported in 177 Pac. 780.

$705, the contract price for labor and material in building seven gasoline tanks for defendant's boat, in Whatcom county. The case was tried to a jury, and resulted in a verdict and judgment against defendant for the sum of $705. Defendant has appealed from the judgment.

The complaint set forth the manufacture and delivery of the tanks and the failure of appellant to pay the purchase price. Appellant, in its answer, admitted the contract and receipt of the tanks, but denied all liability and indebtedness, claiming the tanks were improperly built and of no use to it. Further answering, and by way of affirmative defense, it alleged that, after commencing to build the boat, the contract for the tanks was let, by which respondent was to furnish the material and construct the tanks and install them in the boat for the purpose of carrying gasoline as fuel for the boat, which was to engage in fishing in Alaskan waters during the season then near at hand; that, upon taking the boat to Seattle and attempting to fill the tanks with gasoline, it was discovered that they had been constructed in such unworkmanlike manner they would not hold gasoline, could not and have not been used; that the defective condition of the tanks caused five days' delay in Seattle in having an expert examine them to determine if they could be repaired, and in procuring drums to carry gasoline, upon concluding the tanks could not reasonably be repaired, causing damages in the sum of $150, wages of the boat's crew; that such defective condition of the tanks necessitated the purchase of drums in the sum of $600 to carry gasoline, after which use they were worth only $150; and that the placing of the drums containing gasoline on the deck of the boat prevented the taking of other freight, to

appellant's damage in the sum of $300. Appellant demanded judgment in the sum of $900. The reply denied the affirmative matter pleaded in the answer.

Upon many points there was a conflict in the evidence, but from all of it, whether disputed or not, the jury might well have found the facts to be substantially as follows: Respondent had built tanks for appellant prior to the ones in question, according to a blueprint furnished. The present tanks were to be built in the same manner but of different size than the blueprint called for. Completed, they contained $500 worth of material and $205 worth of labor. They were built and placed in the boat by respondent, as the contract called for, while the boat was being constructed, just a few days before starting on the Alaskan trip. Respondent knew what they were to be used for, and usually such tanks are tested; these were not tested, appellant's officers saying they felt sure they would be all right. Respondent had nothing to do with connecting up the tanks, after they were put in place, by feed-pipes for flow of the gasoline through them. This was done by appellant, and while its plumber, or head fitter, as he is spoken of, was connecting up the tanks, he went to one of the persons who had helped respondent build the tanks and asked for and got a ladle and wiping cloth, saying he had broken a lug off the tank and wanted to wipe it on again. A ladle is used to dip solder with, and a wiping cloth is a piece of ticking folded in thicknesses to place and wipe metal any place needed, and, among sheet-metal workers, a lug is a projecting piece or threaded nut on the tank to receive a connecting or feed-pipe.

Within a few days after receiving the tanks, appellant had six of them connected up. The boat was then taken to Seattle for gasoline, when it was found the tanks would not hold it, and the six tanks have

never been used by appellant. The boat and crew remained in Seattle five days at an expense of $100. Fifty drums, at $12 each, were procured by appellant to carry needed gasoline, although twenty-eight of them had as much capacity as the tanks, which drums, at the time of trial, were worth five or six dollars each. Upon discovering that the tanks leaked, respondent was notified of the fact, but also notified that the boat had already sailed to Alaska. The tanks have never been tendered back to respondent, nor has respondent been offered an opportunity to take them out of the boat. At the time of the trial, six of the tanks could not be used by appellant for the purpose intended, but they possessed substantial value. One of the seven tanks received by appellant has never been objected to nor paid for.

Concerning the testimony above referred to, wherein appellant's head plumber asked for and received of respondent's witness a ladle and wiping cloth, saying he had broken off a lug, it should be further stated that he told the witness he was doing the plumbing work connecting the tanks in the boat, and the witness shortly after, and on the same day of that conversation, saw him actually engaged at that work. Appellant claims, however, that the admission of this evidence constituted error because improper in rebuttal, and also because it was hearsay. We think there was no error. In chief, respondent had shown good workmanship on the tanks, which appellant had answered with testimony showing a leaky condition of six of the tanks at a later time, hence it was proper for respondent to then show facts which may have reasonably caused that condition. Nor was the testimony hearsay. First, because it was in the nature of an admission or declaration made by appellant's agent

and employee within the scope of his authority and having relation to, and connected with, the transaction in which he was then engaged (1 R. C. L., § 49, page 508; Id., § 53, page 512; *Willcox v. Hines,* 100 Tenn. 524, 45 S. W. 781, 66 Am. St. 761); and, second, the statement was admissible as part of the *res gestae.* It was made by appellant's employee at a time he was actually doing the work of connecting the tanks, and when he desired the articles to resolder the lug which he said he had broken off. *Roberts v. Port Blakeley Mill Co.,* 30 Wash. 25, 70 Pac. 111; *Walters v. Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N. S.) 917.

The jury was instructed to the effect that, if the tanks were defective, as alleged by appellant, then the appellant had the right under the law to refuse to keep them, but that, in such case, it was under obligation to return them or give respondent an opportunity to get them, if labor was required to take them out of the boat, considering the manner in which they had been installed; that, while appellant had the right to presume the tanks were reasonably suited for the purpose for which they were sold and delivered, and was entitled to a reasonable opportunity after receiving them to test them, it was its duty, nevertheless, if the tanks were found to be defective, to so notify respondent within a reasonable time, and thus afford an opportunity to repair them, else deliver them back or give an opportunity to take them down in the boat and remove them; and that the purchaser of an article having intrinsic value may not appropriate it to his own use and defend against an action for the purchase price on the ground it was not of a quality called for; that such course could be pursued by a purchaser only in a case where the article is worthless for any purpose.

Appellant claims that portion of the instruction was erroneous which related to the duty of the purchaser to give the other party an opportunity to repair, or else return, or offer to return, the articles, or to give the other party an opportunity to remove them, unless they were entirely worthless for any purpose. The instruction must be considered in the light of the evidence, the pleadings and all other instructions given. Appellant admits the tanks had value, but claims they were unfit for the purpose intended. By its answer, though admitting the contract, it does not confess liability for the price and then seek to counterclaim, recoup or, by cross-complaint, set off damages claimed to have been suffered on account of a breach of warranty, express or implied, that the articles were suitable for the purpose intended, but it denies liability altogether, simply because the tanks cannot be used for the purpose of holding gasoline, and at the same time, by a pleading denominated· an affirmative defense, demands all damages caused by an alleged defective condition of the tanks, and at the same time keeps the tanks, which possess real substantial value. The articles as they are, by confession of appellant, constitute property of value. If appellant continues to exercise ownership and dominion over the property, then it must pay that price provided for in the contract by which it got possession, with the understanding that respondent would be liable for damages for a breach by it of the warranty that the articles were fit for the use for which they were made. The rule applicable in this case is as follows:

"In order to bar a recovery of the price, the goods must have been returned or tendered, unless they are worthless for any purpose, and it is not sufficient that they are worthless for the particular purpose for

which they were sold." 35 Cyc. 436, 437, and cases cited.

Appellant, in criticizing the instruction, relies upon a rule announced in many cases, including the case of *Fuller & Co. v. Harris,* 48 Wash. 519, 93 Pac. 1080, to the effect:

" 'The purchaser of an article purchased under a warranty is under no obligation to return the same on discovery of breach of a warranty, but may affirm the contract, retain the goods, and recover his damages, arising from the breach of warranty in an action brought by the seller for the purchase price, if any such damages he has sustained.' "

There is no conflict between the rule announced in those authorities and the instruction here complained of. That rule is intended for a different kind of a case than the one presented by the pleadings in the present case. It is obvious from a mere casual reading of that rule that the words "affirm the contract" necessarily mean liability for the *purchase price,* as well as the right to retain the article purchased.

There was no error in giving the instruction complained of. It was proper on respondent's theory that there was no defect in the tanks as manufactured and delivered, as well as that of appellant to the effect that they still retained substantial value. On the other hand, the court was mindful of appellant's claim for damages by instructing the jury, in effect, that, if satisfied the contract was made and entered into and not kept and performed by respondent, resulting in damages to the appellant, then appellant was entitled to recover whatever the evidence showed in the way of damages that reasonably followed the breach as a result and consequence of the defective construction of the tanks.

Appellant complains of an instruction to the effect that there was no evidence in the case which would justify a finding for appellant on account of the item of $300 for alleged loss of freight to Alaska, or any part thereof. Our attention has not been called to any testimony to show the instruction was incorrect. The record fails to show any dependable or substantial evidence to support any claim for such kind of loss.

Other assignments of error are based upon the refusal of the court to give two instructions requested by appellant. It is enough to say they were of such sort as to be improper, according to our views expressed herein on other points.

Considering the verdict in this case — it being for the full amount sued for — and all of the court's instructions, including the one that the burden was on the respondent to prove all controverted allegations of the complaint, it is manifest that the jury was satisfied by the evidence that the tanks were constructed and delivered in a good workmanlike manner, in which event appellant was not entitled to recover for any of its alleged damages.

Judgment affirmed.

CHADWICK, C. J., MACKINTOSH, TOLMAN, and MAIN, JJ., concur.