## NEW YORK LIFE INS. CO. v. TALLEY.
### No. 9849.

Circuit Court of Appeals, Eighth Circuit.

Sept. 4, 1934.

John Inghram, of Des Moines, Iowa (Clifford V. Cox, Donald Evans, and William F. Riley, all of Des Moines, Iowa, on the brief), for appellant.

Neill Garrett, of Des Moines, Iowa (Gibson & Stewart, of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment after verdict in favor of appellee, plaintiff below, in an action brought against appellant to recover disability income payments claimed to be due to appellee; also to recover the return of certain premiums paid by appellee—all under the provisions of a policy of insurance issued to appellee by appellant under date of July 9, 1923.

The policy in question is a regular life insurance contract, providing for the payment of $2,000 to the named beneficiaries upon receipt of due proof of the death of the insured, or $4,000 upon receipt of due proof that the death of the insured resulted from bodily injury, effected solely through external violence and accidental cause.

The policy also contained the following provisions which have a particular bearing upon the controversy in the case at bar:

"And The Company Agrees To Pay To The Insured One per cent of the face of this Policy ($10 per $1,000) each month during the lifetime of the Insured and also to waive

the payment of premiums, if the Insured becomes wholly and permanently disabled before age 65, subject to all the terms and conditions contained in Section 1 hereof.

"This contract is made in consideration of the payment in advance of the sum of $21.32, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this Policy to the Ninth day of January, Nineteen Hundred and Twenty-four, and of $41.00 on said date and every twelve calendar months thereafter during the life of the Insured until premiums for Fifty full years in all shall have been paid from the date on which this Policy takes effect.

"The premium includes an annual premium of $2.10 for the Double Indemnity Benefit and $2.62 for the Disability Benefits.

"This Policy takes effect as of the Ninth day of July, Nineteen Hundred and Twenty-three, which day is the anniversary of the Policy.

"Section 1—Disability Benefits.

"1. Disability Benefits shall be effective upon receipt at the Company's Home Office, before default in the payment of premium, of due proof that the Insured became totally and permanently disabled after he received this Policy and before its anniversary on which the Insured's age at nearest birthday is sixty-five years.

"Disability shall be deemed to be total whenever the Insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit, and under this contract disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months and during all of that period prevented from engaging in any occupation for remuneration or profit. The permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot, shall be considered total and permanent disability without prejudice to other causes of disability.

"2. *Income Payments.*—The Company will pay the Insured, or if such disability results from insanity will pay the beneficiary in lieu of the Insured, a monthly income of one per cent of the face of the Policy during the lifetime of the Insured and the continuance of such disability. The first income payment shall become due on the first day of the calendar month following receipt of proof of total and permanent disability or proof of continuous total disability for three consecutive months, as above, and succeeding payments shall become due on the first day of each calendar month thereafter. Any income payments becoming due before the Company approves the proof of disability shall become payable upon such approval, and subsequent payments will be made as they become due.

"3. *Waiver of Premiums.*—The Company will waive payment of any premium falling due after approval of such proof of disability and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the Policy, but if due after receipt of said proof will, if paid, be refunded upon approval of such proof.

"4. The sum payable in any settlement of the Policy shall not be reduced by income payments made or premiums waived under the above provisions. The loan and surrender values, provided for in Sections 3 and 4 of this Policy, shall be calculated on the basis employed in said sections the same as if the waived premiums had been paid as they became due. The amount of the dividends provided for in Section 2 will be the same as if the waived premiums had been paid as they became due.

"5. *Recovery from Disability.*—The Company may from time to time demand due proof of the continuance of such total disability, but not oftener than once a year after such disability has continued for two full years, and upon failure to furnish such proof, or if it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, income payments shall cease and the payment of any premium thereafter falling due shall not be waived."

August 21, 1925, plaintiff suffered an attack of infantile paralysis which affected both of his legs and his hips. Thereafter due proofs of disability were furnished to the company; and on December 21, 1925, the company sent to the insured a check for $40, stating that it covered disability payments due November 21 and December 21, 1925. The letter also stated that the premiums due in January and July, 1926, had been waived.

Disability payments continued to be made by the company up to and including August 21, 1926.

The semiannual premiums falling due during this period were waived.

Plaintiff enrolled as a vocational student in the University of Commerce at Des Moines, Iowa, and about September 1, 1926, began to attend classes. He kept this up with somewhat indifferent success until May, 1927. He

again attended the school for a short time in the fall of 1927.

In October, 1927, he went to Iowa City for medical treatment, and did not return to school that fall.

August 20, 1926, plaintiff was examined by Dr. Kersell, the local examiner for the insurance company. The last monthly indemnity payment was made by the company August 21, 1926. Thereafter the company sent notice to the insured that payment of premiums would have to be recommenced.

The father of the insured went to the office of the company to inquire about the matter. He testified relative to the interview: "They spoke like the boy was not totally disabled and payments had been stopped and if I wanted to keep up the policy I would have to start paying the premiums again, which I did. I have either paid the premiums since or furnished the money to pay them."

The record does not show that the insurance company ever asked for new or further proofs of disability; nor was any demand made by plaintiff on the insurance company for resumption of disability payments or waiver of premiums.

The present suit was commenced in February, 1933. The case was tried to the court and a jury. At the close of plaintiff's case, defendant moved for a directed verdict in its favor. The motion was denied.

The jury returned a verdict for the amount of the indemnity payments from August 21, 1926, to the time of the commencement of the action; also for the amount of premiums paid during the same period.

[1] We shall not discuss the evidence in detail, because upon this appeal it must be assumed that the evidence was sufficient to sustain the finding of the jury that the disability suffered by the insured in August, 1925, was total and permanent. We make this assumption for the reason that such an issue as to total, permanent disability was submitted by the court to the jury, which was instructed that an affirmative finding was a prerequisite to a verdict for plaintiff; and appellant does not in its argument in this court contest such finding, but contends that it is immaterial.

There is no claim that the proofs furnished to the company in August, 1925, and in the three months succeeding, of total, permanent disability, were not full, complete, and satisfactory.

As above stated, disability payments were made by the company for a period of nine or ten months, and the premiums were waived by the company during the same period.

It is to be noted that no disability benefits become payable under the policy unless the disability is both total and permanent. As to total disability, the policy states: "Disability shall be deemed to be total whenever the Insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit."

As to permanent disability, the policy states: " * * * Under this contract disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months and during all of that period prevented from engaging in any occupation for remuneration or profit."

The policy apparently contemplates that total, permanent disability may come to an end while the insured is still living, for it provides: "The Company may from time to time demand due proof of the continuance of such total disability, but not oftener than once a year after such disability has continued for two full years, and upon failure to furnish such proof, or if it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, income payments shall cease and the payment of any premium thereafter falling due shall not be waived."

This ceasing of total and permanent disability may be satisfactorily shown to the company in either of two ways: First, by a demand by the Company of due proof of the continuance of such total disability and failure on the part of the Insured to furnish such proof; or, second, "if it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit." The two methods of proof are distinct and purport to aim at different matters. The first relates to the physical condition of the insured. The second relates to ability to engage in an occupation for remuneration or profit without regard to whether the physical condition of the insured has changed or not; for example, a new and feasible occupation might have come into existence since the happening of the disability of the insured. The words "if it shall appear to the Company" of course imply reasonable proof to the company. A mere conjecture would not be sufficient.

There is no showing in the record that the company followed either of the two methods above outlined for ascertaining whether there

had been a cessation of the total, permanent disability of the insured. No demand was made upon the insured for new proofs. The record shows that the local examiner of the company at its request made a physical examination of the insured in August, 1926; but there is no showing what was disclosed by the examination, or even that the result was communicated to the company.

So far as the record shows, no attempt whatever was made by the company to obtain information by the second method. The methods provided by the policy were therefore, so far as the record shows, not even attempted by the company.

■■ But the contention of the appellant company is that in August or September, 1926, the company claimed that the disability was not permanent; and that the insured acquiesced in this claim by resuming payment of premiums and by continuing such payments for several years; that the insured was estopped by such conduct thereafter to claim that the permanent disability had not ceased.

We do not agree with this contention. The verdict of the jury has determined that this claim of the company was wrongful. The company could not make a wrongful claim that total, permanent disability had ceased and predicate an estoppel against the insured to deny the truth of the claim, upon his failure to forthwith deny it, or upon conduct of the insured based upon the assumption that the claim of the insurance company was true. Neither estoppel by silence nor estoppel by conduct goes so far. Both rest upon the basis that the silence or the conduct has induced another party to believe in the existence of a state of facts upon which that other party acts to his prejudice. Such an estoppel has no application to the situation in the case at bar.

Prior to any silence or conduct of the insured, the company was claiming that the total, permanent disability had ceased. The company was not induced to make such claim by any silence or conduct on the part of the insured. There was no misrepresentation by the insured. The only misrepresentation was by the insurance company. It is fair to state, however, that we find nothing in the record which leads us to think that the misrepresentation was in any way fraudulent or dishonest. The most that can be said of the conduct of the insurance company and the insured is that both acted under a mutual mistake of fact. We think it clear that the elements of an estoppel against the insured were not present. 21 C. J. p. 1125, § 128, note 45

(b); p. 1150, § 154; p. 1216, § 221; Busby v. Busby, 137 Iowa, 57, 114 N. W. 559.

Furthermore, the situation of the insured, when in September, 1926, he was met by the claim of the company and by its demand for the resumption of payments of premiums, must not be overlooked. The policy provided, not only for disability benefits, but for regular life insurance. The insured was told by the company that, if he "wanted to keep up the policy," he would have to start paying the premiums again. He was confronted with the alternative of paying the premiums or letting the whole policy lapse. Great caution should be exercised in applying the doctrine of equitable estoppel to such a situation.

It is also contended by the company that, even if the insured is entitled to recover the indemnity benefits, he is not entitled to recover the premiums paid because they were paid voluntarily.

■ The rule that money voluntarily paid cannot be recovered back has many conditions, qualifications, and exceptions. Among the conditions is one that the payor must have had full knowledge of all the facts. One of the qualifications is that compulsory payments are not within the rule; and what constitutes compulsion depends upon the peculiar facts and circumstances of each case.

In Radich v. Hutchins, 95 U. S. 210, 24 L. Ed. 409, the rule in regard to involuntary payments is stated by the court in its opinion as follows (page 213 of 95 U. S., 24 L. Ed. 409): "To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment."

This rule is quoted with approval by the court in its opinion in the case of Lonergan v. Buford, 148 U. S. 581, 590, 13 S. Ct. 684, 37 L. Ed. 569; and in Furness Shipping & Agency Co. v. Barber & Co. (C. C. A.) 6 F. (2d) 779; Ingram v. Lewis (C. C. A.) 37 F. (2d) 259, 70 A. L. R. 702. See, also, Union Pac. R. R. Co. v. Public Service Comm. of Mo., 248 U. S. 67, 39 S. Ct. 24, 63 L. Ed. 131; Lipman, Wolfe & Co. v. Phœnix Assur. Co. (C. C. A.) 258 F. 544.

Still a third qualification or exception to the rule against recovery of payments vol-

untarily made exists; ordinarily, payments made under a mistake of fact and which the payor was under no legal obligation to make may be recovered back. 48 C. J. p. 759, § 318. Especially is this true where the mistake of fact is mutual. 48 C. J. p. 764, §,320; United States v. D'Olier Engineering Co. (D. C.) 215 F. 209.

Applying the rule thus conditioned and qualified to the situation in the case at bar, we are of the opinion that recovery of the premiums paid may be recovered back. The insured did not have full knowledge of all the facts in the situation. He ignorantly acted on the assumption that the claim of the company was rightful and based upon established facts, although not known to him. He was mistaken in this assumption. He had no other immediate remedy against forfeiture of the whole policy than payment of the premiums. His policy was property; the whole value of it was threatened unless payment of the premiums was resumed. The payments made under such circumstances were involuntary. There is no showing that his continued payments and his delay in bringing suit worked any harm to the company.

As we have already intimated, both the insured and the company, in our opinion, labored under a mutual mistake of fact. The company has received from the insured moneys which in good conscience it should not retain, and which belong to the insured under the terms of the policy.

We think the foregoing views are sustained by the authorities above cited, and also by the following: Still v. Equitable Life Assur. Society, 165 Tenn. 224, 54 S.W.(2d) 947, 86 A. L. R. 382; Wenstrom v. Ætna Life Ins. Co., 55 N. D. 647, 215 N. W. 93, 54 A. L. R. 289; Hopkins v. N. W. National Life Ins. Co., 41 Wash. 592, 83 P. 1019.

We have examined the cases cited by appellant company [Detroit Edison Co. v. Wyatt Coal Co. (C. C. A.) 293 F. 489; Standard Oil Co. v. Storage Co., 163 Tenn. 565, 44 S.W.(2d) 317; Warren v. Federal Life Ins. Co., 198 Mich. 342, 164 N. W. 449; Rosenfeld v. Boston Mutual Life Ins. Co., 222 Mass. 284, 110 N. E. 304; Richards v. Security Mutual Life Ins. Co., 230 Mass. 320, 119 N. E. 744; Jones v. Provident Savings Life Assur. Society, 147 N. C. 540, 61 S. E. 388, 25 L. R. A. (N. S.) 803], but find nothing in them which, in our opinion, precludes the conclusions we have reached.

The judgment of the trial court is affirmed.