PROVIDENT LOAN BANK *v.* E. R. PARHAM, Revenue Agt.

## (*Jackson.*   April Term, 1917.)

1. **STIPULATIONS. Agreed statement of facts.   Construction.**

In an action to restrain the collection of license tax as pawn-
broker levied against a bank, an agreed statement of fact that
the bank had in some instances loaned and collected money on
the pledge of personal property will be construed as meaning
that the bank had received personal chattels on pledge for loans,
though personal property is broad enough to include bills, notes,
and other choses. in action.   (*Post, p.* 481.)

2. **BANKS AND BANKING.   License.  Liability as Pawnbrokers.**

A bank whose charter empowered it to receive deposits, discount
notes, deal in gold, silver, bonds, and stocks, advance money on
pledge or mortgage of real and personal estate, and sell the
same, but specially provided that it could not carry on the
business of a pawnbroker and which only occasionally, in con-
nection with its banking business, loaned money on the pledge
of personal chattels, is not subject to the license tax imposed on
pawnbrokers.   (*Post, pp.* 481-485.)

Cases cited and approved: Trentham v. Moore, 111 Tenn., 346;
Cigar Co. v. Cooper, 99 Tenn., 472; Union & Planters' Bank v.
Memphis, 101 Tenn., 154; Barlin v. Knox Co., 188 S. W., 795.

3. **STIPULATIONS.   Agreed statement of facts.   Construction.
"Few."**

In a suit to restrain the collection of a pawnbroker's license tax
from a bank, an agreed statement of facts that there had been
only a few instances in which the bank had loaned money on
the pledge of personal chattels, would be satisfied by the hap-
pening of two or three such incidents, since "few" means not
many, of small number, indicating a small number of units or
individuals which constitute a whole.   (*Post, pp.* 481-485.)

FROM SHELBY

Appeal from the Chancery Court of Shelby County.

FRANCIS FENTRESS, Chancellor.

R. E. KING and EARL KING, for appellant.

L. D. BEJECH, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill charges that complainant is a banking corporation doing business in Shelby county, and that the defendant Parham, as State revenue agent, and John C. McLemore, as county court clerk of Shelby county, are claiming that the bank is liable for a pawnbroker's tax for a series of years, and were about to levy upon its property under a distress warrant to collect the taxes mentioned.

An injunction was sought and obtained. By agreement between the parties the necessity of paying the money in and suing for it back under the statute was waived, and consent was had to try the right under the injunction bill. While we very much doubt whether such a waiver could be properly made, yet, as the case is before us, we shall consider it on its merits.

The chancellor granted relief perpetually enjoining the execution of the distress warrant, and the defendants have appealed.

The question arises under the following language of the bank's charter:

"This corporation shall also be invested with the right and power to receive money on deposit . . . to discount promissory notes, bills of exchange, or other evidence of debt, to buy and sell the same, deal in gold, silver, bullion, bonds, stocks, or other securities generally, advance money upon a pledge or mortgage of real or personal estate, and sell the same, and have and possess all other rights which obtain and belong to a banking institution except the power to issue notes for the purpose of currency, which power is hereby withheld.

"It shall not have the power to carry on the business of a pawnbroker in connection with its business as a bank."

There is an agreed statement of facts, but we need quote only a few lines from it:

The bank "has loaned and collected a majority of its money on mortgages of real estate, and on mortgages of personal estate, which personal estate remained in the possession of the owner giving the chattel mortgage. It has loaned and collected money in some instances on the pledge of personal property, which pledge was received by the Provident Loan Bank and kept in its possession until the loan was paid. It has at no time advertised as a pawnbroker. It has at no time displayed a sign as a pawnbroker. In a few instances where property has been pledged for a loan and the loan has not been paid, proper steps by advertisement and sale have been taken to realize the amount of the loan with legal interest."

Before undertaking a solution of the question at issue, it is proper to dispose of a point made on the argument as to the meaning of the language ''personal property'' in the sentence, ''it has loaned and collected money in some instances on the pledge of personal property,'' etc. The bank's attorney contends that the term ''personal property'' is broad enough to cover bills, notes, bonds, and other choses in action, and that it is a part of the regular banking business to accept these as collateral, and that such property is not customarily used in the pawnbroking business. We think the construction is too narrow. If that had been the meaning of the parties when they drew the agreed statement of facts the case would never have been brought into court at all. In our opinion the parties intended to stipulate that the bank had in some instances received personal chattels on pledge for loans, as jewels and the like.

The question is whether an occasional transaction of this kind would stamp the bank as a pawnbroker, and make it subject to license as such. Taking into consideration all of the language which we have quoted from the charter with respect to the pledge of personal estate, and with the denial of the power to carry on the business of a pawnbroker in connection with the banking business, we are of the opinion that it was intended that the bank should have the power in occasional transactions to make loans on a pledge of personal chattels, as a mere incident to its general business, but that such power should not be exercised to the extent of carrying

on the business of a pawnbroker. The agreed statement of facts shows that there had been only a few instances during the life of the bank running over about three years. This language would be satisfied by the happening of two of three such incidents within the time mentioned. In Webster's New International Dictionary the term "few" is defined: "Not many; of small number—indicating a small number of units or individuals which constitute a whole." Of course, the term is indefinite and might mean certainly two or three, or even more; but we take it the State would not have agreed to the language indicated if the number of such transactions were not inconsiderable and merely occasional. Under this construction of the agreed statement of facts, which we think a just one, we do not believe that the bank can be properly charged with having conducted a pawnbroking business. Its situation was different from that occupied by an individual who should conduct two or three pawnbroking transactions in immediate succession, since these occasional transactions would be within the line of the complainant's business as set forth in its charter, whereas an individual doing acts covered by a privilege tax, and hence having no right to conduct such transactions at all without paying a tax, might be responsible for such taxes. The difference is found in the permission given the bank by its charter to make loans in this form. It was held in *Trentham* v. *Moore*, 111 Tenn., 346, 76 S. W., 904, that the performance by an individual of a single act covered by a privilege tax would not of itself subject him to the tax; that there

would have to be something in addition to this single act to indicate his purpose to exercise the privilege. It was said in that case, in effect, that a clause in a legislative act providing in substance that the party should be held for the tax whether carrying on the business or not was nugatory, since the privilege was only imposed· upon a business. So the question is, as already indicated, whether the bank was carrying on the business of a pawnbroker, and, as previously suggested, we are of the opinion that an occasional instance through a series of years under a power given the bank by its charter to take pledges of personal chattels as security for loans would not be sufficient to charge it with carrying on the business of a pawnbroker. Of course, such a delicate power would have to be exercised by the bank with great discretion and great restraint, in a purely incidental way, so as not to infringe seriously upon the business of pawnbrokers who are required by law to pay a heavy tax.

We are referred by counsel for the State to the case of *Cigar Co.* v. *Cooper,* 99 Tenn., 472, 42 S. W., 687, as strongly supporting the State's claim for the taxes. That case, however, is quite distinguishable from the one before us. It appeared that the Knoxville Cigar Company was a firm of retail merchants licensed as such and doing business in the city of Knoxville; that they carried in stock cigars, showcases, a general line of tobacco, pipes, soap, and at times jewelry and other articles generally carried in a mercantile establish-

ment; that they sold cigars both at wholesale and retail; that cigars were kept in a showcase on the counter in their store in the same room with the other stock kept by them, and were retailed to consumers. The other parties involved in the controversy were Baggett & French. They were retail liquor dealers in Knoxville, and carried in stock liquors, wines, beer, tobacco, mineral water, and the like, and operated under a liquor dealer's and merchant's license. They retailed cigars to customers, the cigars being kept only a few boxes at a time on the counter in the building occupied by them as a saloon. The tax sought to be recovered of the parties referred to was one levied upon the privilege of keeping cigar stands, the amount being graded according to the population of the place of sale. It is clear from this state of the facts that both of these firms had a cigar stand, and were making a daily practice of selling cigars, and so were keeping a cigar stand, and were properly held for the tax levied for the exercise of the privilege. The State also refers to *Union & Planters' Bank* v. *Memphis,* 101 Tenn. (17 Pickle), 154, 46 S. W., 557; but we are unable to see that this case has any bearing on the controversy. The latest case we have on the subject is *Barlin* v. *Knox County,* 188 S. W., 795, 136 Tenn., 238. In that case it appears an effort was made to collect a privilege tax for shoe-shining, which was done in a barber shop; the contention of the county being that this occupation was a privilege. The court held that it was a mere incident to the business of run-

ning a barber shop, and was not taxable as a separate privilege.

On the grounds stated, we are of the opinion that the chancellor committed no error, and his judgment is affirmed.