JAMES A. WENSTROM, Respondent, v. ÆTNA LIFE INSURANCE COMPANY, a Foreign Corporation, Appellant.

(— A.L.R. —, 215 N. W. 93.)

**Insurance — accident policy — proof of accident.**

1. In an action on an insurance policy, when the record shows that the doctor who attended the insured, after an accident, corresponded with the insurance company, and reported the condition of the insured to said company, such correspondence and reports are sufficient proof of injury to the insurance company.

**Insurance — recovery of indemnity — evidence of total disability.**

2. The provision in a paragraph, in an insurance policy, viz.: "will pay to the life beneficiary the sum of ten dollars for each thousand dollars of the sum insured and will pay the same sum on the same day of every month thereafter during the lifetime, and during such disability of the insured," qualifies the other provisions in the paragraph, and under settled law for the construction of insurance policies, the insured is entitled to recover the indemnity during the entire period of his disability, whether it be for life, for years or for months, and if he recovers his health the indemnity ceases.

**Insurance — recovery of premium paid after disability.**

3. An insurance premium may be recovered, if paid during a year when the insured was disabled, and the insurance company not entitled to such premium under the policy.

Opinion filed August 18, 1927.

Accident Insurance, 1 C. J. § 38 p. 414 n. 27; § 39 p. 416 n. 33; § 174 p. 466 n. 57; § 334 p. 506 n. 71.   Insurance, 32 C. J. § 259 p. 1149 n. 48; § 265 p. 1152 n. 95; § 406 p. 1234 n. 43 New.

Appeal from judgment of the District Court of Foster county, *Jansonius, J.*

Affirmed.

*Lawrence, Murphy & Nilles,* for appellant.

The general rule that insurance contracts are to be construed against the insurer does not authorize the court to make a new contract for the parties or to refine away the terms of the contract expressed with sufficient clearness to convey the plain meaning of the parties.   14 R. C. L. 932.

*C. W. Burnham* and *Lemke & Weaver,* for respondent.

An action at law for the recovery of money only, and therefore properly triable to a jury, whether thus tried or not, is not triable de novo in the supreme court on appeal.   American Case & Register Co. v. Boyd, 133 N. W. 65.

Where aside from nonproduction of proof of loss, the company repudiates all liability it would be useless and unavailing to furnish the proofs, and in such cases the insured is excused for their nonproduction.   Johnson v. Dakota F. Ins. Co. 1 N. D. 169.

If such a policy is capable of two constructions, that interpretation must be placed upon it which is most favorable to the insured.   Penn Mut. L. Ins. Co. v. Milton, 40 A.L.R. 1392, 127 S. E. 140.

The question as to whether the insured has suffered a total disability must, from the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which he is engaged.   Holm v. Interstate Casualty Co. 172 N. W. 1105.

BURKE, J.   The plaintiff, a farmer, 46 years of age, on the 11th day of February, 1920, applied for, and received from the defendant company an insurance policy containing the following provision, viz.:

"*Six months after proof is received at the Home Office* of the Com pany that the insured has become wholly, continuously and permanently disabled and *will for life be unable to perform any work or conduct*

*any business for compensation or profit,* or has met with the irrevo-
cable loss of the entire sight of both eyes, or the total and permanent
loss by removal or disease of the use of both hands or of both feet, or
of such loss of one hand and one foot, all from causes originating
after the delivery of this policy, the company will, if all premiums
previously due have been paid, waive the payment of all premiums
falling due thereafter during such disability, and if such disability
was sustained before the insured attained the age of sixty years, the
company will pay to the life beneficiary the sum of ten dollars for
each thousand dollars of the sum insured and will pay the same sum
on the same day of every month *thereafter* during the lifetime and dur-
ing such disability of the insured."

On August 22, 1924, the plaintiff was thrown from a horse, break-
ing three of his ribs near the spine. On March 28, 1925, he undertook
to ride on a cart attached to a harrow, and drive a team of horses
hitched to the harrow. A strap coming loose on the harness, he stopped,
went around in front to adjust the strap, when the team started up
and not being able to get out of the way, he fell and broke his leg.
About six weeks before the trial, the plaintiff again fell, and broke a
leg. The plaintiff had been continuously under the care of the doctor
from the time of the first injury until the time of the trial, and claimed
at that time, that he was still suffering from pain resulting from the
first accident. He said, "I have a continual pain in my back and side,
and cannot work since the first accident." The doctor who attended
him from the first accident until the time of the trial, stated, that in
his opinion the injuries were permanent. He was on crutches at the
time of the trial, on account of breaking a leg six weeks before. On
being questioned about the second injury he says, "I had another
injury later than that, that caused me to assume the crutch, I was using
a cane a little while this year, I could not get around very good, and
I stumbled and fell and broke a bone here about six weeks ago." The
doctor testified that he thought that he would have the use of his leg
as soon as the third break was fixed up. For the defendant, two doc-
tors testified in effect that in their opinion the injuries were not per-
manent.

The court made findings of fact and conclusions of law favorable

to the plaintiff, and from a judgment thereon, the defendant appeals, specifying as error.

1. "That prior to the commencement of the action no proof of any kind was submitted to the defendant company of any alleged total and permanent disability as required by the terms of the policy."

2. "That the evidence is not sufficient to establish that the plaintiff was totally and permanently disabled within the meaning of the policy of insurance."

3. "That the court erred in including in the judgment and permitting recovery for total and permanent disability from the date thereof and also permitting recovery of the premium paid by the plaintiff thereafter contrary to the terms of the policy which prescribed that such benefits do not accrue until six months after satisfactory proof of such claim of total and permanent disability is submitted to the company, and that there is no evidence to establish that the plaintiff in fact paid any such premium for which recovery was allowed."

The term "proof" as used in paragraph 5 of the policy quoted herein does not mean absolute conclusive proof of permanent disability of the insured.   It means some evidence or notice to the company that the insured has been injured, and the company then has six months to investigate, and determine whether or not, the disability is permanent within the meaning of the policy.   If the proof furnished must be conclusive the company would need no time for investigation, but could commence paying the indemnity at once, and it follows, that upon any notice to the company of a permanent injury to the insured, it is the duty of the company to begin its investigation at once so that the insured may have the indemnity if he is entitled to it under the policy.

The appellant does not contend that it did not receive such notice, the contention is, that there is nothing in the record to show that there was ever any notice to the company, and on the other hand, it is the contention of the respondent, that the question of notice was not raised in the lower court, that the record does contain evidence of notice to the company, and that appellant cannot raise the question for the first time in the appellate court.   The record does not show that the question was raised in the trial court, and it does show some evidence of notice to the company.

On page 8 of the transcript in the cross-examination of the plain-

tiff, he is asked, if he didn't write to the company in November 1925, and he says, "Yes, I believe I remember that, that was on Sunday." On page 9 of the transcript, he is asked, this question. "These various letters you wrote to the company, were they written by yourself or someone else?" Answer. "By myself." It is apparent from this testimony that the respondent wrote various letters to the company, other than the one written at Devils Lake in November, 1925.

On page 21 of the record, the doctor who treated respondent, on cross-examination is asked, "What would you say as to the possibility of that union becoming better?" Ans. "It will improve in time." "That is what I wrote to the company, that was my correspondence with the company." This testimony is in reference to the breaking of a leg on March 28, 1925. Again on page 27, the doctor still under cross-examination is asked, "The test you made showed negative?" Ans. "Yes, as I remember." "If there was anything else it would have gone with the report to the company." The record shows that the company received letters not only from the respondent, but also from the doctor reporting the condition of the respondent. He states that all the tests he made with reference to the general health of the respondent aside from his injuries showed negative, and if there had been anything else the matter with the respondent, aside from his injuries, it would have appeared in the reports which he made to the company. We are of the opinion that the record does show that the defendant company had notice of respondent's injury.

The next contention of the appellant is, that the evidence is not sufficient to establish that the plaintiff was totally and permanently disabled within the meaning of the policy of insurance. Appellant insists that under the provision in the policy, viz.: "six months after proof is received at the home office of the company that the insured has become wholly, continuously and permanently disabled and will for life be unable to perform any work or conduct any business for compensation or profit;" it must conclusively appear from the evidence that the insured is wholly disabled forever, not only in the kind of employment he was engaged in, when insured, but in any other employment and to any extent.

In support of his theory he relies upon the case of Hurley v. Bankers Life Co. 198 Iowa, 1129, 37 A.L.R. 146, 199 N. W. 343. In this

case the Iowa court says: "Contracts of this character, are not always identical in phraseology. The cases fall quite readily in two general classes: Those wherein the policy provides for indemnity if the insured is disabled from transacting the duties pertaining to the occupation in which he is then engaged, and those wherein the policy provides for indemnity if the insured is disabled from performing any work or following any occupation. This case belongs to the latter class." We meet at once the question in the case, as to whether or not appellant became totally, permanently, and incurably disabled, and is thereby prevented permanently, continuously, and wholly from performing any work or following any occupation? It will be noted that there is a difference in the language of the policy construed in the Iowa case and the language in the case at bar. In the former are the terms "totally, permanently and incurably disabled, and is thereby prevented permanently, continuously, and wholly from performing any work or following any occupation." Under the policy in the Iowa case, the disability must be *total,* and *incurable,* and the insured must on account of such total, incurable disability, be prevented permanently, continuously and wholly from performing any work, or following any occupation. In the case at bar, the policy does not include the words "totally," "incurably," or "occupation." It does not say, that the disability must be total and incurable, and there is language in the same paragraph which must be considered, and which indicates that the disability may be curable. The policy continues, "And if such disability was sustained before the insured attained the age of sixty years, the company will pay to the life beneficiary the sum of ten dollars for each thousand of the sum insured and will pay the same sum on the same day of every month thereafter during the lifetime and *during such disability of the insured."* What is the meaning of this phrase? *"during the lifetime, and during such disability of the insured?"* If the disability must be incurable and continue during the life of the insured, it would be sufficient to say that the same sum would be paid on the same day of every month during the lifetime of the insured. Is not this provision in the policy the same as if the contract said, will pay the same sum on the same day of every month during the lifetime of the insured, and as long as he is disabled? We must assume that the phrase, "or during such disability of insured" means

something, and if it means anything it means that the amount will be paid during such disability, whether it be for life, for years, or for months, and it would seem, that it is placed there to cut off the indemnity in case the insured recovers.   It is settled law, that, in construing insurance policies the language of the entire policy must be considered, and when capable of two constructions the most favorable to the insured must be given.   Under this rule we are of the opinion that the words, "and during such disability of the insured" qualifies the preceding language in that paragraph so as to permit a recovery when the disability is curable, but the indemnity ceases if the insured recovers.   From this construction it follows, that the insured is entitled to the indemnity during the entire period of his disability.

The policy is not so definite and certain as the policy in the Iowa case or the New York case, Ginell v. Prudential Ins. Co. 205 App. Div. 494, 200 N. Y. Supp. 261.   The Ginell case is first reported in 119 Misc. 467, 196 N. Y. Supp. 337, and more of the policy is quoted in the opinion, than in the opinion of the appellate division, reported in 205 App. Div. 494, 200 N. Y. Supp. 261.   The policy in the Ginell Case states specifically when the monthly payments begin as follows, "The company will in addition to such waiver, pay to the insured monthly the sum of ten dollars. . . .   The first monthly payment shall be made six months after the company shall receive such proof and subsequent payments shall be made on the first day of each month. . . ."   Here is a specific statement that the payments are monthly payments of ten dollars, and these monthly payments of ten dollars each, are to begin by making the first monthly payment of ten dollars, six months after proof of disability, and subsequent monthly payments are to be made on the same day of each month thereafter. The policy in the case at bar does not contain any such language. . It says, that the company will pay the sum of ten dollars for each thousand dollars of the sum insured, and will pay the same sum on the same day of every month thereafter *during the lifetime, and during such disability of the insured.*

The case at bar is easily distinguished from the New York case, and the Iowa case, and we are of the opinion that the insured is entitled to the indemnity during the entire period of his disability.

The Iowa case follows the early case of Lyon v. Railway Pass. Assur.

Co. 46 Iowa, 631, and the court said: "The Lyon Case was decided in 1877. Contracts of insurance in this state have presumably been entered into in view of that decision since that time. The effect of the holding can easily be obviated by a change in the phraseology of the contract. We are not disposed to now overrule the Lyon Case, or depart from the rule therein announced. If it were a case of first impression, we find much persuasive argument in appellant's contention." In this case the authorities sustaining the "Lyon case," and the authorities contrary, are cited at considerable length; and it also appears that many courts have held, that the question of total disability is a question for the jury, under the particular facts of each case. After citing the decisions the court says, "It must be conceded that the majority of the courts of the country are not in line with our conclusion in the Lyon case." In addition to the cases cited in the Iowa case, there is the late case of Penn Mut. L. Ins. Co. v. Milton, 160 Ga. 168, 40 A.L.R. 1382, 127 S. E. 140, and State ex rel. Security Mut. L. Ins. Co. v. Allen, 305 Mo. 607, 267 S. W. 379. It appears from this record, that, in addition to broken legs, and broken ribs, the insured was suffering from traumatic neurosis. Dr. Crawford for the appellant testified, "I have no particular theory in regard to that, about the cause of that pain, some of those pains where the person has been injured persist, and are what we call as a rule traumatic neurosis, or an injury resulting in neurosis, with no pathological foundation. A nervous disease, especially a functional disease." Dr. McKensic testified for appellant, "that the pain in the back of the insured was probably traumatic neurosis, a condition due to, or resulting from an injury, and there is just as much chance of this condition being permanent as there is of a recovery." It is the pain in the side and back of which the insured complains, that is what keeps him awake nights, and makes it necessary for him to be propped up in bed so he can sleep. None of the doctors testified that he would recover from this particular ailment. The pain in the back and side was continuous from the time of the first accident in August 1924, until the day of the trial, June 2, 1926, a period of nearly two years, and the trial court in his memorandum opinion states, that, "the insured was apparently suffering during the trial." In addition to this, Dr. Crawford for the appellant states, "Mr. Wenstrom gave him all of the fact."

"He was perfectly fair in every way." "He came in the afternoon and stayed, and later came to my office and gave me a chance to go over some points I might have overlooked." "Mr. Burnham, attorney for the insured, turned over to him the X-ray films which they had taken, and both did all they could to help and assist the doctors for appellant." This all shows that the insured was acting in good faith, in his claim for indemnity.

The only remaining question is, whether the insured was entitled to recover the premium he paid in August 1925. The accident was on the 22d day of August, 1924, the regular date for the payment of the premium was on the 11th of August, and on the 11th of August, 1925, the insured paid the premium as usual, and when he brought suit he included in his action a claim for the payment of insurance. Appellant concedes that the premium was paid August 11th, 1925, but claims that it was a voluntary payment, and cannot be recovered.

If the insured was entitled to his indemnity there was no premium due in 1925, and yet, since the company refused to allow the claim of indemnity, the insured could not afford to take chances in not paying the premium, and losing his policy in case he was not entitled to indemnity. Since, under the terms of the policy the appellant was not entitled to the premium in 1925, the insured is entitled to recover the premium paid. The judgment of the trial court is affirmed.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.