John H. Still, Complainant, Appellee, v. The Equita-
ble Life Assurance Society of the United States,
Defendant, Appellant.*

(*Knoxville*, September Term, 1932.)

Opinion filed November 26, 1932.

*As to rule against right to recover payments voluntarily made,
see annotation in 75 A. L. R., 658; 21 R. C. L., 141; R. C. L., Perm.
Supp., p. 5024; R. C. L., Pocket Part, title "Payment," section 165.
As to what constitutes involuntary payment, see 21 R. C. L., 146.
As to stipulation of facts, see 25 R. C. L., 1104; R. C. L., Perm.
Supp., p. 5653.

HAVEN & WESTERBERG, for complainant, appellee.

WILLIAMS & FRIERSON and SAMUEL B. SMITH, for defendant, appellant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Complainant, John H. Still, is the holder of a life insurance contract, issued to him in 1926 by defendant, providing for monthly payments and waiver of premiums during total and permanent disability. The contract provides that such benefits shall become effective "upon receipt of due proof" of total and permanent disability, in which event the insurer shall "waive payment of all premiums payable upon this policy falling due after receipt of such proof and during continuance of such total and permanent disability."

In January 1932, the insured brought this suit, averring that he had suffered a total and permanent disability in May, 1930, of which he had furnished proofs to the defendant in September, 1930; that the defendant wrongfully and arbitrarily refused to recognize his claim and refused to waive the premium due January 30, 1931, which complainant paid. An amendment to the bill averred the payment of a premium payable January 20, 1932. The prayer of the bill sought recovery of the monthly payments since proofs were furnished in September, 1920, and the amount of the two premiums paid after proof of disability had been furnished, which, the bill avers, "complainant was forced to pay in order to prevent the defendant from declaring a forfeiture of said policy."

After the second premium in suit was paid, the parties

settled by compromise the claim for monthly payments, and stipulated that complainant's demand for recovery of the two premium payments should be tried and determined by the court upon the facts stipulated. The Chancellor decreed for complainant and the defendant has appealed.

Defendant (appellant) assigns as error that "upon the agreed facts, complainant paid said premiums voluntarily and with full knowledge of the facts and it was error to decree their recovery."

Defendant relies upon the rule of common law, most recently stated by this Court in *Standard Oil Co.* v. *Petroleum Products Storage Co.,* 163 Tenn., 565, 575, 44 S. W. (2d) 317, quoting from 48 Corpus Juris, 734: "A person cannot, either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed." See also: *Prescott* v. *City of Memphis,* 154 Tenn., 462, 285 S. W., 587, 48 A. L. R., 462.

Material facts stipulated are that in September, 1930, complainant furnished the defendant with "statements of his physicians setting out his physical disabilities, and making claim that he was entitled to the payment of total and permanent disability benefits from May 3, 1930;" that "the defendant not being satisfied with the proofs of disability," additional proofs were furnished and defendant made investigation on its own behalf and finally declined to recognize liability in January, 1932; that before each of the contested premiums was paid, defendant notified complainant that payment would be necessary to keep the contract of insurance in force, and that in default of the premium "the policy and all pay-

ments thereon will become forfeited and void,'' except the surrender value and rights.

The only reference in the stipulation to the settlement of the claim for monthly payments is the following: ''After the filing of the bill in this cause the matter of complainant's claim for disability benefits was compromised and settled and the defendant paid to him these disability benefits from October 3, 1930, to June 3, 1932, the amount paid being the amounts payable between those dates without interest.'' This stipulation is dated June 6, 1932.

If we grant the contention of complainant that defendant's payment of disability benefits from October 3, 1930, is a concession on its part that it received due proof on that date of complainant's total and permanent disability, it is nevertheless true that the defendant is not shown to have recognized or become convinced of the fact of complainant's disability until the date of the stipulation, June 6, 1932. There is therefore nothing in the record to show or indicate fraud, contumacy or bad faith in any degree on the part of the defendant, in its refusal to accede to complainant's claim of disability and refusal to waive payment of the two premiums. It is stipulated that the first proofs furnished were not satisfactory to the defendant and that additional proofs were furnished. The proofs furnished are not included in the stipulated facts, and we may not guess or conjecture about their completeness or conclusiveness. The compromise settlement was made seventeen months after the first of the two premiums was paid, and several months after the second was paid. The disability claimed was a general impairment of health, with resulting anemia and heart disorder, intangible in character

and usually difficult to measure as to extent and duration.

So we think the case presented is one in which the parties were each acting in good faith, complainant claiming that his disability was total and permanent, and defendant asserting the contrary. Under these circumstances defendant declined to waive the two premiums and complainant paid them.

It is not contended that the premiums were paid under mistake of fact. No material facts were concealed by the defendant, and complainant does not charge that any facts bearing on his rights were unknown to him at the time he paid the premiums. The bill charges only that the first premium was paid "in order to prevent the defendant from declaring a forfeiture of said policy;" and that the second premium was paid "in order to prevent the defendant society from declaring said insurance policy forfeited and void for nonpayment of premiums and thus deprive the complainant of his rights under said policy and the benefits due him thereunder."

Under the meager facts stipulated, we think that no fraud or extortion is shown on the part of the defendant. And if its refusal to waive the premium was made in good faith, as we must presume in the absence of any showing to the contrary, it was its duty to issue the notices calling complainant's attention to the consequences of default in the payment of premiums.

Duress of property which will support the recovery of money paid and received was comprehensively considered in the case of *Johnson* v. *Ford,* 147 Tenn., 63, 245 S. W., 531. In that case the contract between the parties was incidental to a much larger project in which the complainants were involved. The defendants withheld from complainants property to which they were

entitled, under circumstances indicating wilful breach of obligation, amounting to fraud, and complainants were compelled to pay defendants the sum wrongfully demanded, not merely to obtain the property contracted for, but to avoid the loss of other sums they had expended and contracted to spend. The excess payment was characterized by the Court as "an involuntary payment made necessary by the fraud and bad faith of the defendants." Complainants were held entitled to recover the sum so paid defendants, as having been paid under duress of property, the authorities reviewed by the Court sustaining that decree.

In the case now before us the elements of fraud and bad faith on the part of the defendant, present and emphasized in *Johnson* v. *Ford,* are absent. However, if in fact the complainant had suffered total and permanent disability, and had furnished defendant with "due proofs" thereof in September, 1930, the defendant's refusal to waive the premium payments due in 1931 and 1932 was a breach of its contract and was therefore wrongful. And by this wrongful act the complainant was confronted with the alternative of paying the premiums when due, or by not doing so, assuming the risk of losing his right to continue his insurance in force until its maturity at his death, if he should be unsuccessful in proving his disability to be both total and permanent. That this was a real hazard, with the outcome uncertain, is inherently obvious in the nature of the issue in controversy. The defendant, after months of investigation, had declined to recognize liability, first in January, 1931, and again in January, 1932, and the question of the totality and permanency of the disability was one to be determined upon probabilities, not capable of ascertainment with exact certainty. This uncertainty

created by defendant's refusal to concede the disability and waive the premiums, was the compulsion which prompted and impelled the complainant to pay the two premiums, rather than risk his right to continue the insurance on the waiver contracted for.

We do not find from the authorities that fraud or bad faith on the part of the payee is an essential element or condition of an involuntary payment, which may be recovered. We quote the definition of an "involuntary payment" from the text of Ruling Case Law, vol. 21, p. 146: "What shall constitute the compulsion or coercion which the law will recognize as sufficient to render involuntary is often a question of difficulty. From the nature of the question no very precise rules can be laid down. The very word used to describe an involuntary payment imports a payment made against the will of the person who pays. It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills. Ordinarily it may be said duress is that degree of constraint or danger either actually inflicted or threatened and impending sufficient to overcome the mind and will of a person of ordinary firmness."

The text cited continues with the statement that the courts have not attempted to state any definite and exact rule of universal application by which a payment may be classed as voluntary or involuntary, and that in this regard each case must depend somewhat on its own facts. The same view is expressed in the text of Corpus Juris, vol. 48, pp. 742-743 (Payment, section 294), with the added thought that duress, "as a ground for the recovery of money paid is a relative, rather than a positive term," and that "where there is a necessity of act-

ing at once, less may be considered to amount to such compulsion than in other cases.''

In *Young* v. *Hoagland,* — Cal., —, 298 Pac. 996, 75 A. L. R., 654, payment by a stockholder of an illegal assessment in order to avoid a sale of his stock, pending litigation to determine the legality of the assessment, was held to have been involuntary and under sufficient compulsion to authorize suit and recovery of the payment. The compulsion held sufficient to constitute the payment involuntary was stated by the court thus: ''The stockholders were either compelled to pay the assessment or suffer their stock to be sold for the nonpayment thereof. In case they refused to pay the assessment, and it was finally held to be legal, they lost their stock. We question whether under such circumstances a reasonably prudent person would permit valuable stock owned by him to be thus jeopardized.'' The court then referred to the persistent contention of the defendants that the assessments were legal, and held that the circumstances entitled the stockholders to recover the amounts paid.

In the case just cited the Supreme Court of California referred to the modern tendency of courts to relax the severity of the common-law rule against the recovery of payments improperly exacted. In the case note, 75 A. L. R., 658, it is pointed out that the real relaxation has come ''in the definition of what constitutes an involuntary payment, recovery of which has always been permitted.'' The annotator quotes from Page on the Law of Contracts, p. 2622, sec. 1530: ''The theory that payments made under compulsion could be recovered appeared in the common law at so late a period that from the very outset the ideas of equity had enormous influence upon the idea of duress or compulsion as a ground

for recovering payments. Equitable principles control, therefore, rather than technical common-law notions, as in other cases where the action for money had and received is brought.''

In *Adrico Realty Corp.* v. *New York,* 250 N. Y., 29, 164 N. E., 732, 64 A. L. R., 1, the enforceability of a special assessment tax lien depended upon facts outside and beyond the tax record, the existence of which facts could be established or disproved only by parol testimony, ''the outcome of which might at best be uncertain.'' Delay in payment of the assessment would impose an annual penalty of seven per centum. Said the Court: ''To relieve itself of this uncertainty and this liability created by an assessment which might possibly be void when the facts were ultimately established, the plaintiff paid the assessment and stopped the running of the penalty. Was this unreasonable or improper within the authorities? These facts I think bring this case within the reasoning of *Peyser* v. *New York* (70 N. Y., 497, 26 Am. Rep., 624), which I have quoted above. Coercion is 'that duress of person or goods, where present liberty of person or *immediate* possession of goods is so needful and desirable, as that an action or proceedings at law to recover them will not at all answer the pressing purpose.' Time is sometimes an element to be considered.'' The court therefore held that ''if the assessment was void by reason of facts *dehors* the record, the payment made by the plaintiff to relieve the land of the assessment and the burden of the penalties was not a voluntary payment, and it may be recovered back.''

Referring to the conception of the annotator in 75 A. L. R., hereinabove quoted, that the relaxation of the common-law rule evidenced by the modern cases lies in the broadened definition of what constitutes an involuntary

payment, we think the point well expressed in the following observation of the Court of Appeals of New York in the case last cited: "Few rules of law can be applied without examination or analysis. The notion that the fundamental principles of law have been modified or changed when new circumstances present new phases of application is a mistaken one. We do not make the facts to fit a rigid formula, but rather re-examine our formulae to see whether they fit the facts. Therefore this rule of voluntary payment is dependent upon what is considered voluntary and what duress, also upon what is a mistake of law, as distinguished from a mistake of fact, and the determination of these questions varies the application of the rule."

In *Federal Life Ins. Co.* v. *Lewis*, — Okla., —, 183 Pac., 975, 5 A. L. R., 1637, payment of premiums under circumstances similar to those in the present case was recovered by the policy holder, the insurer apparently making no claim that the payment was voluntary.

In *Wenstrom* v. *Aetna Life Ins. Co.*, — N. D., —, 215 N. W., 93, 54 A. L. R., 289, a similar case, the defense of voluntary payment was made, but the court apparently did not consider the question debatable. The Court said: "If the insured was entitled to his indemnity there was no premium due in 1925, and yet, since the company refused to allow the claim of indemnity, the insured could not afford to take chances in not paying the premium and losing his policy in case he was not entitled to indemnity. Since, under the terms of the policy, the appellant was not entitled to the premium in 1925, the insured is entitled to recover the premium paid."

We are strongly inclined to the view that under the facts and circumstances of this case as herein set out, a

person of ordinary business sense and prudence would have weighed the consequences with the same result as did the complainant. The compulsion under which the payments were made is apparent to anyone who appreciates the value of a life insurance contract. The complainant was so situated that, if he failed to establish the permanency of his disability, he could not hope to obtain other insurance. Decision could not be postponed and time was of the essence of the matter. The payments were necessary to preserve valuable rights, and under the authorities cited we hold they were not voluntary. This holding is, we think, in accord with the rules of law and equity.

The defendant cites and relies upon four cases in which payments of premiums on insurance contracts were held to have been voluntary and not recoverable by the insured. *Howard* v. *Mutual Reserve, etc., Assoc.*, 125 N. C., 49, 45 L. R. A., 853; *Jones* v. *Provident Sav. L. Assur. Soc.*, 147 N. C., 540, 25 L. R. A. (N. S.), 803; *Rosenfeld* v. *Ins. Co.*, 222 Mass., 290; and *Maryland Casualty Co.* v. *Little Rock Railway & Electric Co.*, 92 Ark., 306. In each of those cases the issue in controversy was the amount of the premium due, dependent upon the proper construction of the written contract, a pure question of law. It is sufficient to distinguish them from the case at bar by reference to the difference in the facts here relied upon to establish compulsion or duress.

It is however contended by assignments of error that the stipulated facts do not support a finding that complainant was totally and permanently disabled, or that due proofs of such disability were furnished the defendant prior to January 20, 1931, so as to entitle complain-

ant to a waiver of the two premiums under the terms of the insurance contract.

It was agreed by the parties that complainant's right to recover the premium payments should be submitted to the court "upon the following, which are stipulated to be the facts." The stipulation then contains the statement, above quoted, that complainant's claim for disability benefits was compromised and settled, and that "Defendant paid to him these disability benefits from October 3, 1930, to June 3, 1932, the amount paid being the amounts payable between those dates without interest."

From these stipulated facts the Chancellor drew the inference that defendant recognized and admitted its liability for the monthly disability benefits from the date it received the first proofs, October 3, 1930, which he construed to be an admission that the disability existed and that due proofs were furnished.

■ A stipulation of facts, upon which a case is submitted for decision, "may be taken with all the admitted facts and the inferences legitimately to be drawn from them." *Federal Trade Commission* v. *Pacific States, etc., Association,* 273 U. S., 52, 71 L. Ed., 535; *Wright* v. *Dorman,* 155 Tenn., 189, 291 S. W., 1064; *Provident Loan Bank* v. *Parham,* 137 Tenn., 483, 194 S. W., 570.

"Stipulation in regard to the evidence should receive a fair and liberal construction so as to carry out the apparent intention of the parties and promote fair trials on the merits. In cases of doubt appellate courts strongly incline toward the construction adopted by the trial court." 20 Ency. Pl. & Pr., p. 622.

"Stipulations are ordinarily entered into for the purpose of avoiding delay, trouble or expense. As a general rule they should receive a fair and liberal construction,

in harmony with the apparent intention of the parties and the spirit of justice, rather than a narrow and technical one, calculated to defeat the purposes of their execution; and in all cases of doubt that construction should be adopted which is favorable to the party in whose favor it is made." 25 Ruling Case Law, pp. 1095-1096 (Stipulations, sec. 1).

The pleadings made the right of the complainant to recover the premium payments to depend on the existence of total and permanent disability. The answer made no question with regard to the furnishing of due proofs, but averred: "Complainant, even if he could show the necessary disability from May 3, 1930, is not, under the terms of the policy, entitled to recover from that date, but only for the time beginning with the receipt of due proofs of disability, or three months thereafter." This was an admission that if the requisite disability existed, due proofs were filed in September, 1930, before the first disputed premium was paid.

Defendant's concession of liability for the full amount of the monthly disability benefits contracted for is described as a compromise settlement, but the complainant yielded only the accrued interest thereon. Whatever inference might or might not be drawn from such concession or admission of liability ordinarily and in the absence of special circumstances, we think when the defendant stipulated that the fact of this settlement should be treated by the court as a fact upon which the controverted question of complainant's right to a waiver of the premium payments should be determined, the Chancellor was justified in the inference that the defendant had conceded the fact of disability as claimed by complainant.

The decree of the Chancellor, for complainant, will be affirmed.