**KENTUCKY HOME MUT. LIFE INS. CO. v. DULING.**

No. 11182.

United States Court of Appeals
Sixth Circuit.

July 16, 1951.

Cecil Sims, Nashville, Tenn., and Charles I. Dawson, Louisville, Ky., Charles I. Dawson, Richard Dawson, Louisville, Ky., Bullitt, Dawson & Tarrant, Louisville, Ky., on brief; Cecil Sims, and F. M. Bass, Jr., Bass, Berry & Sims, all of Nashville, Tenn., of counsel, for appellant.

George C. Anderson and Joseph L. Lackey, Nashville, Tenn., Joseph L. Lackey, George C. Anderson, Nashville, Tenn., on brief, for appellee.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Kentucky Home Mutual Life Insurance Company, appeals from a judgment which held in effect that an increase in premiums put into effect by the appellant under a group policy of insurance covering the lives of employees of the Nashville Postal Employees Benefit Society was invalid.

The policy which is involved in this case was originally issued by the Inter-Southern Life Insurance Company on January 19, 1927, by which the Insurance Company insured the lives of 171 members of the Nashville Postal Employees Benefit Society, an unincorporated association. By subsequent mutual agreement, the anniversary date of the policy was changed from January 19th to February 19th, so that beginning with February 19, 1932, each policy year began on February 19th. The policy was issued for a term of one year, renewable from year to year for a further term of one year upon the payment of the premium for the amount of insurance as renewed. The policy set out the amount of insurance available to members according to age, and contained a schedule of premium rates per $1,000 at all ages from 15 to 100 years, inclusive, effective at the beginning of the policy year for which the premium was payable. The policy contained this provision: "At the end of each year from date hereof the Company shall have the right to change the premium rates at which subsequent renewals shall be computed, such changes being based on the Company's classified group mortality experience and schedules then in force."

Contemporaneously with the issue of the policy there was endorsed upon it the following provision:

"Unless or until otherwise provided by the Nashville Postal Employees Benefit Society, each member insured hereunder shall pay the same rate per $1,000 of insurance. This individual premium rate per $1,000 of insurance will be determined at the beginning of each policy year by dividing the total premium calculated as provided in the policy contract by the total insurance benefit, and this rate shall be applicable to each member insured hereunder regardless of age.

"Any employee insured hereunder whose membership in the Nashville Postal Employees Benefit Society is kept in good standing, may have his insurance granted hereunder continued, so long as this group policy is continued in force and the premiums due for such insurance are duly paid by the employer to the Company."

As authorized by that provision of the policy, up to the policy year beginning February 19, 1933, all members of the Society paid each year the same premium rate per $1,000 of insurance, irrespective of age. Following receivership proceedings against the Inter-Southern Life Insurance Company, a judgment was entered on August 8, 1932, authorizing and approving the reinsurance of the business of Inter-Southern Life Insurance Company, including the group policy herein involved, by the appellant.

The provision endorsed on the policy under which each insured member paid the same rate per $1,000 of insurance, irrespective of age, resulted in the younger members of the group paying more and the older members paying less than they would have paid had each paid the schedule rate applicable to his attained age. For the purpose of eliminating this unfairness to the younger members of the Society, the Insurance Company, prior to the beginning of the policy year starting February 19, 1933, submitted to the Society for its approval what was known as a step-rate schedule of premiums, under which each member paid an annual rate per $1,000 according to the group of years in which his age fell. This proposal was approved by the Society, and the Insurance Company was so advised by letter. The Insurance Company caused to be mailed to each insured member a letter dated January 26, 1933, advising each member of the change in rates and of the exact schedule of rates applicable to the individual member under that change. The new rates were made effective for the policy year beginning February 19, 1933, and were continued in effect for each policy year thereafter to and including the policy year beginning February 19, 1945, and each insured member during that period of time paid the rate applicable to him under the step-rate schedule.

Prior to the policy year beginning February 19, 1946, the Insurance Company decided that instead of continuing to collect from each of the insured members premiums calculated according to the step-rate schedule, it would collect premiums based upon the attained age rate schedule for each insured employee as set out in the policy. It notified the secretary of the Society of this decision by letter dated January 19, 1945, and this new schedule of rates was put into effect as of February 19, 1946, and has been in effect since that time. Beginning with February 19, 1946, all insured members have paid the new schedule of rates on the attained age rate basis, as set out in the policy. This resulted in causing some members to pay higher rates and other members to pay lower rates than they would have paid under the step-rate schedule.

The present action was filed on January 16, 1948 in the State Court of Tennessee by Albert Duling suing individually and as representative of a class, the members of the Nashville Postal Employees Benefit Society alleging that the membership of the Society was so numerous that it was impractical to join each member as a party and that the complainant was the duly elected president of the Society. The complaint alleged that the Insurance Company's refusal to accept premiums from the members of the Society at the same rate per $1,000 of insurance regardless of their respective ages was a material breach of its contract of insurance with them, for which it was answerable in damages to each of said members to the extent of all premiums

paid by each member with interest, in the total amount of $80,000.

The case was removed by the Insurance Company to the U. S. District Court on the ground of diversity of citizenship and the fact that the amount in controversy exceeded the sum of $3,000 exclusive of interest and costs.

■ The Insurance Company filed an answer pleading as a defense the consent and approval of the Society and its members of the change from a uniform rate to the step rate, and also alleging that by their approval of this new schedule of rates the Society and its members surrendered their right for each of them to pay the same rate per $1,000 regardless of age, and that thereafter the individual members were obligated to pay the rate applicable to them under the step-rate schedule, subject to the right of the Company to change those rates at the beginning of any policy year, as provided in the policy. The answer also pleaded an estoppel.

Thereafter the bill of complaint was amended by an additional count which alleged that the changes in rates made in 1933 and 1946 were in violation of the contract provisions by reason of which the members of the Society were entitled to recover from the Insurance Company the excess premiums so paid. The prayer asked for an accounting of such excess premiums, and, instead of asking for a cancellation of the policy, asked that the Insurance Company be required to specifically perform its contract. Inconsistent claims are permitted by Rule 8(e) (2), Fed.Rules Civ.Proc., 28 U.S.C.A.

The Insurance Company filed an amended answer in which it pleaded the conduct of the insured members of the Society in accepting said change in rates and thereafter paying them without protest as a waiver of any rights which they were attempting to assert. In preliminary rulings the District Judge held that the Insurance Company had the right to make the change to the step-rate schedule effective February 19, 1933, and denied any recovery on account thereof. The case went to trial on the right of the Insurance Company to make the change in 1946 from the step-rate schedule to the attained-age rate.

Following the hearing of proof, the District Judge held that Duling was entitled to maintain the suit individually in his own behalf and in behalf of all other members of the Society, who had to pay increased premiums by reason of the change in 1946; that any member of the Society who decided to do so might become a party to the suit by filing a petition therein within thirty days thereafter; that the change in rate for the policy year beginning February 19, 1946 was made in violation of the terms of the policy and was a constructive fraud upon the holders of the policy; that the step-rate system of payment in effect prior thereto remained in full force and effect until a change was consented to by the members of the Society; that any member of the Society who had paid increased premiums as a result of the change was entitled to recover the amount of such premium increase with interest; that the Insurance Company should permit members of the Society who allowed their insurance to lapse because of the change in rate to reinstate their insurance under the policy upon payment of the current premium; that as to any members of the Society who had died since the increased rate became effective and whose insurance was allowed to lapse on account of the increase in rates, the Insurance Company should make payment to the named beneficiary or executor of the amount of insurance which would have been payable under the policy had such member continued the policy in force, less the amount of any unpaid premiums which would have been due under the step-rate basis of payment; that the Insurance Company should have the right to institute the necessary proceedings in this cause to recover any deficiencies in premiums paid by members of the Society; and that a special master be appointed to carry out the purposes of the judgment. This appeal followed.

■ The case was properly removed to the District Court, which thereby acquired jurisdiction by reason of diversity of citizenship and the amount in controversy. § 1332, Title 28 U.S.Code. The

original complaint disclosed the amount in controversy to be in excess of $3,000 exclusive of interest and costs, which was controlling in the absence of any denial or other allegations which clearly showed that the jurisdictional amount did not exist. Nathan v. Rock Springs Distilling Co., 6 Cir., 10 F.2d 268. The second cause of action set up in the amended complaint filed after the action was removed, did not, in view of the ruling contained in the next succeeding paragraphs, disclose the necessary jurisdictional amount. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135. The Court entered judgment upon the second cause of action. We are of the opinion that the jurisdiction previously acquired upon removal was not divested by the filing of the amended complaint and was sufficient for the entry of judgment on the additional count set up in the amended complaint, although insufficient in jurisdictional amount, if standing alone. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845; B. & O. Southwestern R. R. v. United States, 220 U.S. 94, 106, 31 S.Ct. 368, 55 L.Ed. 384; Kirby v. American Soda Fountain Co., 194 U.S. 141, 146, 24 S.Ct. 619, 48 L.Ed. 911; Yates v. Whyel Coke Co., 6 Cir., 221 F. 603, 606; Heffner v. Gwynne-Treadwell Cotton Co., 8 Cir., 160 F. 635.

■■ A preliminary matter for initial disposition is whether the District Court erred in treating the action as a class action and in permitting others than Duling to intervene and obtain the recovery adjudicated. As pointed out in Hansberry v. Lee, 311 U.S. 32, 41 through 45, 61 S.Ct. 115, 118, 85 L.Ed. 22, the "class" or "representative" suit is a recognized exception to the general rule that one is not bound by a judgment in a litigation in which he is not a party, and was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of litigation was so great that their joinder as parties was impractical. "In such cases where the interests of those not joined are of the same class as the interests of those who are,

and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree." Unless it can be said that the interests of the absent parties are fairly protected by those who seek to represent them, such class procedure lacks the necessary quality of due process.

■■ In the present case, the interest of each insured member of the Society is separate, not joint. He may continue or terminate his insurance without affecting the insurance of other members. The disability or death benefits are paid or refused according to the facts pertaining to his individual situation. Termination of his employment affects his own insurance only. Nor can it be said that each insured member has the same interest in the present suit. The interest of some are antagonistic to the interest of Duling. In his original complaint, Duling asked for the cancellation of the policies. It is very probable that many of the employees would prefer to continue their policies in effect at whatever rates might be determined by this litigation, rather than cancel their policies and seek insurance in other companies, possibly with less or different benefits or with higher rates. This would be particularly true in the case of members of the Society who may have become uninsurable since their policies were first issued. In the amended complaint, Duling seeks to reinstate the step-rate premium. In his individual case, this would result in a material reduction in the premium to be paid by him. In a great many cases, however, it would mean an increase in the premiums paid by particular members of the Society. While Duling would be entitled to a refund, other members of the Society would be called upon to make up the deficiency in premiums previously paid. The District Judge recognized this situation by including in the judgment authorization to the Insurance Company to institute the necessary proceedings in this cause to recover such deficiencies. Duling admitted in his testimony the existence of this conflict of interest, the absence of any specific authority to represent the other members of the

Society, and the fact that he was probably not a proper representative in this suit of all the insured members of the Society. We are of the opinion that the District Court erred in permitting this case to be treated as a class action and in not restricting it to a determination of the rights of Duling individually and of any other members of the Society who might be properly joined as parties thereto under Rule 20(a) of Rules of Civil Procedure. Hansberry v. Lee, supra; Annotation 132 A.L.R. 749; Trailmobile Co. v. Whirls, 6 Cir., 154 F.2d 866, 871–872, reversed on other grounds 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328. None of the other members of the Society were joined as parties plaintiff and the present judgment confers no rights upon them as parties to the action. The so-called intervention by some of them, after the entry of the judgment and as provided by the judgment, has likewise conferred no rights as yet upon the ones so intervening. The intervening petition merely states that they have insurance under the group policy in question. This is not a pleading stating a cause of action against the Insurance Company, and does not comply with the provisions of Rule 24(c), Rules of Civil Procedure. Mullins v. De Soto Securities Co., D.C., 2 F.R.D. 502, 505, appeal dismissed 5 Cir., 136 F.2d 55; Babcock v. Town of Erlanger, D.C.E.D.Ky., 34 F. Supp. 293, 295. Merely adding their names to the record, after judgment, does not entitle them to the benefits of the judgment.

■ Proceeding to the merits, this leaves for consideration Duling's individual claim against the Insurance Company for excess premiums paid by him under the attained-age premium schedule, effective February 19, 1946. If the Insurance Company was authorized to make the change in 1946 from the step-rate schedule to the attained-age schedule, Duling is not entitled to any recovery. The appellant contends that the change was authorized by the specific policy provision reading—"At the end of each year from date hereof the Company shall have the right to change the premium rates at which subsequent renewals shall be computed, such changes being based on the Company's classified group mortality experience and schedules then in force." Apparently, appellee does not contest the fact that the change in 1946 was based on the Company's classified group mortality experience and schedules then in force. The evidence shows without contradiction that a change in rates was not only justified by the Company's classified group mortality experience, but was actually required by sound actuarial principles. Appellee contends that by reason of the endorsement on the policy to the effect that each insured member should pay the same rate per $1,000 of insurance, the Company divested itself of any right it might have under the policy provision referred to, to change the system of premium payments thereafter.

■ Appellee's broad contention that the Company lost all right to thereafter make any change in premium rates is clearly unsound. There is nothing in the endorsement conflicting with or abrogating this right in the Company, reserved by the policy itself, to change rates later if conditions required it. The sole purpose of the endorsement was merely to divide the total premiums, calculated on the attained-age schedule, among the insured members evenly instead of unevenly according to individual ages. In any event, the endorsement was effective only "unless and until otherwise provided by the * * * Society." The Society agreed to the change made in 1933. The District Judge rejected appellee's contention in this respect. We agree with the ruling.

■ The District Judge also held that the agreement of 1933, putting the step-rate plan into effect, did not divest the Company of its general reserved right to thereafter raise renewal rates. We think that is also clearly correct. The purpose of the 1933 agreement was to change from an even division among the members of the total premium to an uneven division graduated according to age groups, making the older members pay more than the younger members, which was properly considered a fairer method of payment. There was nothing in the exchange of letters in con-

flict with, or indicating in any way that the Company was releasing the right to raise renewal rates if it encountered unfavorable classified group mortality experience. Such a common, necessary, fundamental provision in group policy insurance is not to be cancelled by implication, doubtful at its best, from an agreement which does not even refer to the provision.

The District Judge ruled, however, that although the Company retained the reserved right to raise renewal rates, it did not have the right to change from the step-rate plan to the attained-age rate plan without the consent of the Society. In other words, the Company could raise the rates for each group in the step-rate plan, but could not change to a different plan of payment. He based his ruling upon the terms of the original endorsement upon the policy, which made effective a method of payment different from the usual individual attained-age method. We agree with the ruling. That endorsement bound the Company as well as the members of the Society. The older members acquired a contractural right to carry insurance at a lower premium than would have been required under the attained-age schedule set out in the policy. The change in 1933, again by mutual agreement, to still a different method of payment was likewise a contract by the Company to accept specified low rates from certain members of the Society. The Company had no right to revert to the attained-age method without the consent of the Society. Such a change involved much more than a change in renewal rates. It materially affected the relative rights between the insured members, acquired by the existing contract provision providing for the step-rate method of payment.

In our opinion, the evidence does not support the finding of the District Judge that the change made by the Company in 1946 was a constructive fraud upon the policy holders. It seems clear that the Company was faced with the necessity of raising rates, which was the result of the Company not being permitted to service the Group and add new younger members to offset the gradual increase in the

average age each year. It had the contractual right to put increased rates into effect, although we have ruled as a matter of law that the particular method adopted was not authorized. The new rates were not arbitrary, being the identical rates set out in the policy as issued, and which determined the amount of the total premiums paid by the insured members from 1927 to 1933. We are of the opinion that Duling's right of action is limited to breach of contract with damages in the amount of the extra premiums paid by him with interest from date of payment.

Appellant contends that Duling ratified the change by paying the increased rate and keeping the insurance in force. There is considerable authority to that effect. Howard v. Mutual Reserve Fund Life Ass'n, 125 N.C. 49, 34 S.E. 199, 45 L.R.A. 853; Jones v. Provident Savings Life Assurance Society, 147 N.C. 540, 61 S.E. 388, 25 L.R.A.,N.S., 803; Rosenfeld v. Boston Mutual Life Ins. Co., 222 Mass. 284, 110 N.E. 304; Maryland Casualty Co. v. Little Rock Railway & Electric Co., 92 Ark. 306, 122 S.W. 994; Aetna Life Ins. Co. v. Thomas, 166 Miss. 53, 144 So. 50, 146 So. 134; Warren v. Federal Life Ins. Co., 198 Mich. 342, 354–355, 164 N.W. 449; Brown v. Federal Life Ins. Co., 353 Ill. 541, 187 N.E. 484; New York Life Ins. Co. v. Levine, 3 Cir., 148 F.2d 313; Ignatovig v. Prudential Ins. Co., D.C.M.D. Pa., 16 F.Supp. 764. But the case is controlled by the law of Tennessee, which permits a recovery of excessive premiums paid by an insured to keep a policy in effect. Still v. Equitable Life Assurance Society, 165 Tenn. 224, 54 S.W.2d 947, 86 A.L.R. 382; Schaad v. New York Life Ins. Co., D.C.E. D.Tenn., 79 F.Supp. 463, 467. See also Columbian Nat. Life Ins. Co. v. Goldberg, 6 Cir., 158 F.2d 971, certiorari denied 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837; New York Life Ins. Co. v. Talley, 8 Cir., 72 F.2d 715; Mercantile-Commerce Bank & Trust Co. v. Equitable Life Assur. Society, 48 F.Supp. 561, reversed on other grounds 8 Cir., 143 F.2d 397; Wenstrom v. Aetna Life Ins. Co., 55 N.D. 647, 215 N.W. 93, 54 A.L.R. 289; Mutual Life Ins. Co. v. Ewing, 151 Fla. 661, 10 So.2d 316.

The judgment is reversed in part and affirmed in part in accordance with the views expressed in this opinion.

The judgment of the District Court is set aside and the action is remanded to the District Court for the entry of a substituted judgment in accordance with the views expressed herein, which will include a denial of the right of Duling to maintain the action in behalf of other members of the Nashville Postal Employees Benefit Society, an elimination of any adjudication of the claims of such other members against the appellant, but sustaining the right of Duling individually to recover from appellant any excess premiums paid by him since the change to the attained-age schedule in 1946, with interest at six percent per annum from the date of each payment, together with the appointment of a Special Master for the purpose of ascertaining and reporting to the Court the amount of such recovery, for which amount judgment is to be thereafter entered; and a direction to the appellant to specifically carry out its contract of insurance with Duling as it existed immediately prior to the invalid change in premium as of February 19, 1946.